## Stroud v. Commonwealth.

(Decided October 27, 1914.)

### Appeal from Whitley Circuit Court.

1. Criminal Law—Venue—Change of Venue—Discretion of Court.—Evidence upon an application for a change of venue examined and held: That the trial court did not abuse his discretion in denying the application, where although there was some excitement at the time of the killing, it had apparently subsided at the time of the trial.

2. Criminal Law—Time of Trial and Continuance—Want of Preparation.—Where accused was arrested about two weeks before the first day of the term at which he was tried, and confined in jail in another county, was brought back to the county where he was tried on the first day of the term, and counsel appointed to defend him, and on the fifth day placed upon trial, having had no opportunity to confer with his counsel, by reason of the attorney's absence on other business, it was reversible error to overrule his motion for continuance.

3. Criminal Law—Trial—Arguments and Conduct of Counsel.—The court having announced many times in language as explicit as words may express, the limitations governing prosecutors in closing argument to the jury, can say no more than that convictions obtained in violation of the enunciations of the court in the respect mentioned, will be set aside upon appeal.

ROSE & POPE, J. N. SHARP and H. W. BOND for appellant.

JAMES GARNETT, Attorney General, ROBERT T. CALDWELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Reversing.

The appellant, Alonzo Stroud. and three other negroes, Emmet Russell, Dan Hoyle and Charlie Jackson, together with four white men, Hubert Bryant, Fred Stanaford, Fred Thompson and Charles Chambers, on the night of the 25th and morning of the 26th of April,

1914, were engaged in gambling in Jackson's house at the Bon Jellico mines near Williamsburg, in Whitley County; and in an altercation which arose during the progress of the game, Stroud shot and killed both Bryant and Stanaford. He was arrested, and taken to London and there confined in the Laurel County jail to wait trial.

On May 11, the regular May term of the Whitley Circuit Court convened, and on the first day of the term, the grand jury returned an indictment charging Stroud with the wilful murder of Bryant. An order was entered setting the case for trial on the fifth day of the term, and the defendant, who had been brought back from London, having announced that he had no attorney and was unable to employ one, the court appointed R. S. Rose and also H. W. Bond (a negro lawyer), to represent him upon the trial of the case.

On the fourth day of the term, defendant made application for a change of venue, which upon a hearing was denied. When the case was called for trial on the fifth day of the term, the defendant entered a motion for a continuance, which motion was overruled.

The defendant was thereupon put on trial, found guilty and his punishment fixed at death. From the judgment of conviction he appeals.

1. He first contends that the trial court erred in denying his application for a change of venue.

His petition therefor set out that he was a negro, while the men whom he killed were white men, one of whom at least was of a wealthy family and was extensively related throughout the county; that there was in the county an intense prejudice against him on account of the killing of Bryant and Stanaford, and that there was a constant rumor over the county that he ought to be mobbed; that inflammatory accounts of the killing had been published in the county newspapers; that friends and relatives of the dead men were openly threatening his life and inciting the public to violence against him; that F. M. Stanaford, father of one of the men whom he killed, was a man of wealth, influence and power, and was then serving as one of the regular petit jurors at that term of the court; that Charles Chambers, who was present and participating in the gambling when defendant shot and killed Bryant and Stanaford, and who was the chief witness for the prosecution, was then serving as one of the regular petit jurors at that term of the court,

and that for these reasons and because of the excitement attendant upon the killing, he could not hope to obtain a fair trial in Whitley County.

In support of his petition, there was filed a number of affidavits. That of David Smith asserted that sentiment was so strong against defendant that affiant did not believe a fair trial possible to be had in Whitley County. Defendant's father swore that he had heard reports from various sources that people were saying defendant ought to be mobbed or hanged. T. H. Newell's affidavit stated that from what he had heard said by the public there was much prejudice and high feeling among the people against the defendant and that it would not be possible for him to obtain a fair trial in the county. The affidavits of W. H. Foster, B. J. Jones, M. V. Miller and Clinton Bradford were identical, each reciting that the excitement since the killing had been so great and the feeling against defendant so bitter, that justice could not be had upon a trial of the defendant in Whitley County;. that there was and still is talk on every hand of mob violence. The affidavits of Rev. R. B. Starnes and Rev. T. H. Crossland are substantially to the same effect.

Upon the hearing of the application for a change of venue, defendant also introduced and examined several witnesses orally. John Horshaw when asked as to the state of feeling against defendant, said: "I have heard some of them complaining *yet* what ought to be done with him." This witness had spoken of the excitement prevailing three weeks before, when defendant was arrested. His answer indicated a subsidence of the excitement during the interval between the arrest of the defendant and his trial, although he testified that at the Bon Jellico mines, two and a half miles from Williamsburg, public sentiment was strongly against defendant.

Defendant also showed that in the Whitley Republican, a newspaper having a circulation of about six hundred copies in the county, there appeared on May 2, 1914, an article giving an account of the killing, and saying that "There are five witnesses who were present at the killing, and as the awful tragedy is related by them, it has caused a general census of opinion throughout the county that Stroud should and will get a death verdict at the trial, which will probably be held at the May term of the court."

John Cain said he had heard some talk of violence, but could not say that defendant would not get a fair

trial; he also said he had heard some people say that the white men mentioned had no business gambling with negroes.

Dick Collins said he had heard people say Stroud ought to be hanged and that he could not get a fair trial, but who these people were he could not recall. He also heard people say that the white men had no business gambling with negroes.

For the Commonwealth, W. L. Moore, former county treasurer and trustee of the jury fund, B. F. Rose, county judge, and Squire Golden, testified that defendant could get a fair trial in Whitley County. J. Wes Perkins, sheriff of the county, said Stroud could be fairly tried there. On cross-examination he admitted that when he brought defendant to Williamsburg for trial, he stopped the train and took him off in the outskirts of the town, and up a back street to the jail, but said he did so to avoid the large crowd usually at the depot on the first day of the term, and not because he apprehended any violent demonstrations.

The trial court in denying the application for a change of venue, said:

"After hearing this evidence and knowing the witnesses and the people here pretty well, the court is of the opinion that there is no danger of a failure of fair trial. I have seen such cases as this many times; and at the time, immediately after the killing, often times there is some little excitement, and sometimes, threats; but after the passing of a week or two that passes away and nothing comes of it. I have seen nothing in the week I have been here to indicate that there was any danger of this man not getting a fair trial. I do not know what the evidence will disclose; but I have no doubt but that there are hundreds of men in Whitley County that have never heard this case discussed and have no idea how it ought to be decided. There is no idea in the court's mind but that the people around town have disqualified themselves and could not serve on the jury, but we expect to get men on this jury who live in the outer part of the county and as far away from this happening as we can, and it will be the purpose of the court to give the defendant a perfectly fair trial."

Without reviewing the evidence on this application in greater detail, we will say that it appears that the evidence in support of the application was based on nothing more substantial than the irresponsible talk

which always follows a crime of this character, and upon the belief that defendant would be at a disadvantage because he, a negro, killed two white men.

The application for a change of venue was made so soon after the commission of the offense that it is not easy to determine from a scrutiny of the record whether, and if so, in what measure, the initial excitement had subsided; but the trial judge was on the ground, and he seems to have been of the opinion that the excitement was localized in and near Williamsburg; that it was not general throughout the county; and that such as it was originally, it had subsided to such extent that he apparently felt confident that the defendant would be afforded a fair and impartial hearing.

The fact that Stanaford's father and Chambers were both serving as regular members of the panel of petit jurors at that term was one that addressed itself to the question of the propriety of granting a continuance rather than to the application for a change of venue.

Upon a consideration of the matter, we have decided that the trial judge did not abuse his discretion in denying the application.

2.  As to the action of the trial court in overruling defendant's motion for a continuance.

It was shown in the affidavit of defendant, filed in support of the motion, that he was confined in the Laurel County jail from the time of his arrest until the first day of the May term of the Whitley Circuit Court, when he was brought to Williamsburg; that on the first day of the term, the court appointed R. S. Rose and also W. H. Bond (a colored lawyer) to defend him; that Rose had been absent from Williamsburg the greater part of the interval between the first day of the term when he was appointed, and the first day of the term when the case was called for trial and the motion for continuance was entered; that he had not, until that time, had an opportunity to confer with Rose, upon whom he chiefly relied for his defense; that he had been in jail and unable to confer with witnesses; and that those who were present at the time of the killing had refused to talk with his attorneys in regard to what their testimony would be upon the trial; and he had not had time to prepare his defense.

These statements are uncontradicted.

In the case of Samuels v. Commonwealth, 154 Ky., 758, it was shown that the defendant was tried, convicted

and sentenced to be executed within six days after the commission of the crime; that in the interval between his arrest and his trial he was in jail, and his attorneys by reason of the press of other matters in court, did not have an opportunity to consult with him and make full preparations for his defense.

In that case, in reversing the judgment of conviction the court said that it would be useless to appoint counsel to defend an indigent defendant unless a reasonable opportunity was afforded counsel when appointed to consult with the prisoner and to study the case, and inquire into all the facts and circumstances surrounding it, so as to be able to be of some service to the prisoner whose rights they have undertaken to protect; that it was error to force the defendant to trial before such opportunity had been afforded his counsel.

In the case at bar the prisoner was brought to Whitley County on the first day of the term, and put upon trial on the fifth day of the term. Counsel was appointed for defendant on the first day of the term, but having employment in a murder case in a distant city, was called there and did not return until the fifth day, when defendant's case was called for trial; and had no opportunity to confer with defendant until the day of trial, so that no more time was allowed him for preparation in this case than in the Samuels case above mentioned.

And, while the granting of a continuance is addressed to the sound discretion of the trial court, and though we are inclined to favor speedy trials, yet we think, under the circumstances here shown, the trial court should have postponed the trial until another day in the term in order to give counsel for defendant an opportunity to investigate, study and fully understand the circumstances of the killing and the nature of defendant's defense, or to have granted a continuance. Smith v. Commonwealth, 133 Ky., 532; Penman v. Commonwealth, 141 Ky., 660; Helton v. Commonwealth, 27 R., 1163; Brooks v. Commonwealth, 100 Ky., 194.

3. Complaint is also made of certain language used by the Commonwealth Attorney in closing argument to the jury. As the case must be reversed for the error in overruling the motion for continuance, and the language complained of will doubtless not be used again, we refrain from a consideration of the matter at length.

The court has many times, and in language as explicit as words may express, announced the limitations

imposed upon prosecutors in closing argument to the jury. We can say no more than that a conviction obtained in violation of the enunciations of the court in the respect mentioned will be set aside upon appeal. Slaughter v. Commonwealth, 149 Ky., 5.

The judgment is reversed for proceedings consistent with this opinion.