## James v. Commonwealth.

(Decided February 9, 1923.)

### Appeal from Carter Circuit Court.

1. **Appeal and Error—New Trial—Waiver.**—Unless the court acts on a motion for a new trial or the orders expressly show that he refused to do so, it will be presumed on appeal that the motion was abandoned or waived by the litigant making it, and he can not rely thereon to obtain a reversal of the judgment.

2. **Criminal Law—Instructions—Waiver.**—An attorney representing a defendant in a criminal prosecution may, if he acts in good faith, waive any question of practice even though it may be a constitutional right of his client, but no such right concerning the constitution of the court or its jurisdiction may be so waived. Hence an attorney representing the defendant in a criminal prosecution may expressly waive his right to an instruction presenting a defense for which there is evidence to support.

3. **Criminal Law—Instructions—Waiver.**—Within the above rule it is competent for the attorney to request the court not to instruct the jury as to his client's right of self-defense, if the attorney acted in good faith and under the belief that it would operate to his client's detriment under the peculiar facts and circumstances of the case.

4. **Criminal Law—New Trial—Newly Discovered Evidence.**—A new trial will not ordinarily be granted on newly discovered evidence, and especially so if it is merely cumulative or impeaching in its nature; but where it is neither, or where, notwithstanding it may be such, it is of such a character as most likely to control or influence the verdict of the jury, a new trial should be granted therefor, provided always that the requisite diligence is shown to discover and produce it at the trial.

5. **Criminal Law—Reversal of Judgment of Conviction.**—Under section 340 of the Criminal Code of Practice the Court of Appeals in a felony case may reverse a judgment of conviction where upon a consideration of the whole record "the court is satisfied that the substantial rights of the defendant have been prejudiced;" and under that authority a judgment of conviction will be reversed

where the record shows a number of errors although neither one of them standing alone would furnish sufficient grounds therefor, if the court is satisfied that it should be done under the section of the Code referred to.

JOHN M. THEOBALD for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On his trial in the Carter circuit court under an indictment charging him with unlawfully and maliciously cutting and stabbing Gomez Littleton with a knife, the appellant, Bert James, was convicted and sentenced to serve a term of two years in the penitentiary. His motion for a new trial was overruled and he has appealed, insisting through his counsel upon a number of grounds for a reversal of the judgment.

The circumstances under which the victim was wounded, which are uncontradicted, or which are overwhelmingly proven, are, that he in company with Roy Barber went to a church meeting at Gregoryville, in Carter county, on the last Sunday night in July, 1922, and from there they went to another church service on Smith branch in the same county at which latter place they arrived but a short time before the closing of the services. Both Littleton and Barber were drinking, and the former was carrying in his belt a large German Luger 9 millimeter pistol. Littleton took a seat by appellant and the latter went from the building into the churchyard as soon as the services closed. Littleton remained in the church while the members of the congregation were going out until all the lights, which were furnished only by lamps and lanterns, were either extinguished or taken from the building with the exception of one lantern near the front door and a lamp in the hands of some one who was on a small platform immediately in front of the door. Near the door on the inside Littleton met Clara Stamper with two of her sisters, and he requested the privilege of accompanying her home, which she declined upon the ground that he was drunk. About that time Willie Buck, who had also been paying attentions to Miss Stamper, appeared and by which time the trio was at the door. Miss Stamper stated that neither of the two could take her home and Littleton replied, "No other son-of-a-bitch can go if I can't." About that time Willie Buck took hold

of the arm of Miss Stamper and said: "I want to see you in the yard," whereupon Littleton struck him and knocked him down and back from the door. He immediately arose and the parties clinched, but they afterwards fell or were thrown upon the floor and a general fight ensued during which time Littleton was cut at two or more places upon his back. It was practically dark in the room and none of the witnesses could see exactly what happened. Appellant was out in the yard and he heard a number of expressions "that Littleton was going to shoot Willie Buck," and he with some difficulty made his way through the congested crowd on the platform into the church building where he found the parties on the floor fighting and, according to his testimony and that of other witnesses, he attempted to separate them. The fight was near the door and as he attempted to enter it Roy Barber, according to his testimony, grabbed appellant by the suspenders and while he was pulling on them they broke, but according to the testimony of appellant Barber cut his suspenders with a knife. After the fight was over Littleton told a number of people that other and different persons than appellant inflicted the wounds upon him. Two witnesses testified that appellant had a knife in his hand as he entered the church building, and one or perhaps two witnesses testified that they saw him striking at Littleton with a knife in his hand. The Commonwealth's witnesses who testified to such incriminating facts were not only contradicted by other disinterested witnesses but they each showed considerable bias toward, as well as interest in, the prosecution. There was also testimony by one witness that appellant borrowed from him on that night a knife which the witness did not regain until the following Sunday when he went to appellant's house for the purpose. The testimony of that witness, however, is so overwhelmingly contradicted that it may be considered as virtually eliminated from the case.

From our brief statement of the evidence it will readily be seen that the disturbing factor at the little country church service on that Sunday night was the prosecuting witness, Littleton, who not only saw proper to attend church services in his shirt sleeves with a young cannon on his outside but with an abundant supply of "moonshine" on his inside, which is an unhealthy combination under any circumstances; and the conclusion is inevitable that he was seeking the whereabouts of Miss Stamper

with the determined purpose to force his company upon her, or to see that "No other son-of-a-b—" did. What we conceive to be the preponderance of the evidence sustains the theory of defendant that when he came upon the scene of the fight the belligerents were down on the floor, and all the evidence goes to show that the cutting occurred while they were clinched and standing, since some of the fingers on one of Buck's hands were also cut, and he testified that his wounds were received while clinching Littleton and before they fell. However, we are not prepared to say that the verdict is so flagrantly against the evidence as to authorize us to reverse the judgment on that ground,

Defendant filed an affidavit for a continuance in which he set out the testimony of a number of absent witnesses for whom he obtained subpoenas some two weeks beforehand and whose testimony was very material to his defense, but the record does not show that the court ever acted on that motion, and the affidavit was not attempted to be read on the trial as the testimony of the absent witnesses. Because the court failed to act on that motion we are forced, under frequent rulings of this court, to treat it as waived by defendant and because of which he has no available complaint therefor on this appeal. His counsel, however, insists that under the ruling of this court in the late case of Biggs v. Commonwealth, 196 Ky. 655, the silence of the record as to the court's ruling on the motion may not be taken as a waiver of the alleged error, but an examination of that opinion shows that the record in that case *expressly* recited that the court *refused* to act on the motion therein complained of. There is no such express showing in this case and we must be governed by the settled rule of practice heretofore announced in such cases.

There is evidence in the case which would authorize the jury to conclude that if defendant did do the cutting with which he is charged he did so in the necessary defense of his nephew, Willie Buck, and it is contended that the court erred in not submitting to the jury his right to defend his nephew by an appropriate instruction. The record shows that the court prepared an instruction along the lines contended for, but which it is claimed was incorrectly drawn, and in it the court also submitted the right of defendant to defend himself from threatened death or bodily harm at the hands of Littleton, as well as to defend his nephew from the same threatened dangers,

but at the request of defendant's counsel, who represented him on the trial, the instruction was not given because attorneys believed that it would operate to the detriment of their client, since his defense was that he was not guilty of doing the acts charged in the indictment. It is insisted by later employed counsel, who briefed the case for appellant in this court, that counsel who represented him on the trial had no right to agree that the law applicable to his defense as developed by the testimony should not be given to the jury, and that appellant who did not consent to it, as claimed, is not bound thereby. We can not give our assent to that contention. The law seems to be well settled that even constitutional rights of defendants in criminal prosecutions, involving mere questions of practice and not affecting the due constitution of the court, may be waived, not only by defendant but also by his counsel, an instance of which is found in the case of Bonar v. Commonwealth, 180 Ky. 338, where it was held that the constitutional right of the defendant to be confronted with his witnesses face to face might be waived even by counsel. It would be no difficult task to cite authorities upholding the right to waive other constitutional rights of a similar nature; but we deem it unnecessary for the purposes of this opinion, since the right here involved is only one relating to a particular defense, which defendant may or not rely on as he chooses, or as his counsel choose for him. Of course, in the absence of such waiver he is entitled to have submitted to the jury, by proper instructions, all the defenses which the testimony tends to establish. Our Criminal Code requires a plea of former jeopardy to be in writing, and it has frequently been held that it can not be relied upon unless so interposed. Surely, it could not be contended that if defending counsel failed to put in such a plea, defendant could afterwards take advantage of it on a motion for a new trial, or on appeal. Without entering into an elaborate discussion of the subject, we will content ourselves with saying that our investigation of the question thoroughly convinces us that defendant is bound by the request of his counsel in this case, unless it appeared that the latter acted in bad faith or as the result of collusion with the prosecution. No such facts appear and this ground can not be sustained.

Defendant filed the affidavits of two witnesses whom he claims to have discovered for the first time after the trial, and they state that they saw the difficulty at the

church and saw Roy Barber strike Littleton in the back with a knife two or three times, and that they saw defendant coming into the church house just after that. One of the witnesses said that he saw Barber with a knife in his hand and striking at either Buck or Littleton, but witness did not know which one. The only circumstances appearing upon the trial bearing upon the fact as to whether Barber did the cutting, and which is the theory of the defense, was the testimony of James, who stated that Barber cut his suspenders instead of breaking them, and that of a witness who testified that Barber tried to borrow from him a knife before the difficulty commenced, and with which he said he intended to cut James, and which fact is admitted by Barber. It will be remembered that the latter went with Littleton to the church that night, and the two had been together for a considerable time prior thereto during which they took several drinks together. The theory of the defense is that Barber cut Littleton in the dark under the mistaken belief that he was cutting Buck, and proven circumstances furnish room for that conclusion. The testimony of the discovered witnesses was held by the trial court to be cumulative and, therefore, insufficient under prior holdings of this court to authorize the granting of a new trial.

We have adopted the rule, and it is our uniform practice to hesitatingly grant new trials upon the ground of newly discovered evidence (Johnson v Commonwealth, 188 Ky. 391, and cases referred to therein) ; but the same cases say that where the evidence is neither cumluative nor impeaching in its nature and where, if true, it would be calculated to control and to cause a different verdict to be returned, the court, in the exercise of a sound discretion, is authorized to set aside the verdict on this ground, provided always that due diligence was exercised by defendant to discover and produce the testimony. This is especially so where, upon a consideration of the whole case, the court entertains grave doubts as to whether defendant had a fair or impartial trial, since "The basic rule of our system of criminal pleading and practice is that every person accused of crime has the right to demand and have a fair trial, in substance as well as in form." Overstreet v. Commonwealth, 147 Ky. 471, and Choate v. Commonwealth, 176 Ky. 427.

Moreover, it is provided by section 340 of the Criminal Code that "A judgment of conviction (in a felony case) shall be reversed for any error of law (appearing

on the record when, upon consideration of the whole case, the court is satisfied that the substantial rights of the defendant have been prejudiced thereby)." The bracket words were added to the section by an amendment of March 4, 1880; and in applying it we have frequently held that where a number of errors appeared in the record, none of which singly and alone would be sufficient to authorize a reversal, one would be ordered if, considering them in the aggregate, we were "satisfied that the substantial rights of the defendant have been prejudiced thereby." Jones v. Commonwealth, 191 Ky. 485. As we have seen, defendant was either entitled to a continuance or be permitted to read the affidavits of the absent witnesses as their testimony; but because of the silence of the record on that motion he was deprived of either. He was entitled to the indicated instruction on defense of his nephew, Willie Buck, but because of waiver by his counsel he was deprived of it. The evidence of his guilt, while it might be considered as sufficient to sustain the conviction, is by no means convincing. Added to this is the newly discovered evidence which we do not regard as cumulative, since no witness had testified in the case that Roy Barber *did* the cutting, the only grounds supporting that fact consisted of only surmises and suspicions. The section of the Criminal Code referred to was intended to and does submit to this court for review the entire record and, necessarily, it must be governed by the facts of each case. Under the authority conferred by it we think we are fully justified in this case in holding that justice demands and requires that a new trial should be granted.

Wherefore, the judgment is reversed with directions to set it aside and to sustain the motion for a new trial, and for proceedings consistent with this opinion.