## Baker v. Commonwealth.

(Decided June 24, 1924.)

## Appeal from Owsley Circuit Court.

1. Criminal Law—Overruling Motion for Continuance Not Considered in View of Record.—Reviewing court cannot consider overruling of motion for continuance where record contains no order manifesting trial court's ruling, or that such ruling was excepted to by defendant, or that ruling was made ground for new trial.

2. Homicide—Dying Declaration Held Properly Admitted.—Statement by deceased made a few hours before death, and following his statement that he knew he had to die, and was without hope of recovery, was admissible as a dying declaration.

3. Criminal Law—Statement of Counsel Held Not Prejudicial.— Statement of counsel for Commonwealth that jury should convict of murder, and that conviction in such cases "would open

up schools and churches . . . and stop moonshining," held not prejudicial.

4.   Homicide—Evidence Held to Sustain Conviction for Voluntary Manslaughter.—Evidence held to sustain conviction for voluntary manslaughter.

RYLAND C. MUSICK and HARRY EVERSOLE for appellant.

. FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, Elisha Baker, following the return against him in the court below of an indictment charging him with the murder of Lee Caudill, was tried and by verdict of the jury found guilty of the crime of voluntary manslaughter and his punishment fixed at confinement in the penitentiary for a period of ten years.   He duly filed a motion and grounds for a new trial, which the trial court overruled; complaining of which, as well as various other rulings of that court during the trial, he has appealed from the judgment of conviction.

It appears from the evidence that the homicide occurred at the home of the deceased after he and the appellant had spent several hours together drinking "moonshine" whiskey, and that at the time of its occurrence each of them was considerably intoxicated.   The only witnesses introduced by the Commonwealth who claimed to have seen the shooting of the deceased by the appellant were his two children, Eva Caudill, thirteen years of age, and Lewis Caudill, Jr., eight years of age.   These children testified, each corroborating the other, that the appellant and deceased were both drinking; that a few minutes before the shooting the two men together walked from the house toward the barn a few yards distant, and on the way the appellant said to the deceased: "Give me my pistol and money so I can go home."   Whereupon the deceased gave him his pistol, but said "he did not have any money of his."   That the two then returned to the house porch, where deceased sat down, but that appellant went into the house, took the shot gun of deceased from the rack in which it was kept, "broke it to see if it was loaded" and came out on the porch with it in his hands still working it.   That upon seeing this handling of the gun by appellant the deceased said to him: "Don't break my gun;" following which statement the appellant

stepped off the porch with the shot gun in his left hand, with his right drew his pistol, pointed it at the deceased and said: "Give me that money," and at the same time shot at and missed him.   Thereupon the deceased handed the appellant a dollar bill saying it was all the money he had; that the appellant then fired two more shots at deceased from the pistol, after which it was grabbed by the deceased who, while holding it with his right hand, got his knife from his pocket with the left, opened it with his teeth and cut the appellant with it.   That the parties then fell to the ground with the deceased on top of the appellant and the latter in a short time got up and went away.

The Caudill children in giving their testimony differed in only one particular, that of the boy being that he and his sister were present throughout the difficulty and saw the whole of it, whereas the girl admitted on her cross-examination that she and the boy ran after the shooting and while their father and appellant were on the ground fighting, to the edge of a wooded hillside forty yards distant.

Carl McIntosh, son-in-law of the deceased and a witness for the Commonwealth, testified that he lived within hearing of the home of the deceased at the time of his death; that he heard the shots that killed the deceased, that there were only two shots and they were fired as nearly together as it was possible for a person to shoot. He also testified that he visited the scene of the homicide early on the morning following its occurrence and discovered on the ground in front, on the side and in the rear of the Caudill house, various evidences such as shoe heel and toe marks that defaced its surface as if made by two men in a fierce struggle or fight. That he also saw on the ground in the rear of the house a pool of blood, an open knife with hair and blood on the blade and near it a pole lying on the ground.   McIntosh further testified that on the morning after the homicide he had a conversation with Eva Caudill at the home of Lewis Caudill, in regard to the killing of her father, in which she told him that she was on the hillside and did not see the fight. Eva had on cross-examination previously denied that she made this statement to McIntosh.

Evidence of a dying declaration from the deceased was introduced by the Commonwealth through the testimony of Clay Mason, deputy county court clerk of Owsley county, to whom the deceased, after declaring that he

knew he would die from the wounds he received at the hands of the appellant and expressing the belief that his recovery was impossible, made a verbal statement containing his account of the facts leading to and attending the difficulty in which he was fatally wounded by the appellant. This statement was that the defendant,. Elisha Baker, went into the house and came out with the shotgun of the deceased and then drew and presented his pistol at the latter, who immediately grabbed hold of Baker and they began to wrestle over the pistol and while wrestling over it they fell on the ground, the deceased on top. That after they fell on the ground Baker shot deceased; and after that deceased pulled a knife from his pocket, opened it with his teeth and cut the defendant Baker. They then wrestled with each other around the house, to the lower corner of the house, where they separated and the defendant then left. Mason further testified that the deceased, upon being questioned by him, also stated that there was no one present at the time of the difficulty but Baker and himself.

The appellant's own testimony, which furnished the only evidence introduced in his behalf, was substantially as follows: That on the day of the shooting of the deceased and before its occurrence, he (appellant) purchased of him a quart of whiskey of which they both drank several times during the day. That awhile before night he and deceased began to talk about his trading for a shotgun owned by the latter, and he (appellant) went into the house of the deceased and brought the gun out to where he was, and deceased then said to him, "Give up my money," made at him with a knife and cut him across the abdomen in two places. That thereupon they engaged in a struggle in the yard and around the house and that while backing away from the deceased his (appellant's) heels struck a pole lying in the yard which caused him to fall on his back and deceased on top of him; that the latter then cut him twice with the knife on the side of his face and head, and this cutting was followed by two shots from the appellant's pistol, fired while he was on the ground under the deceased, which shots inflicted upon the deceased the wounds causing his death. The appellant further testified that Lewis Caudill, Jr., and Eva Caudill, children of the deceased, did not, as claimed by them in testifying for the Commonwealth, witness the difficulty in which their father was shot by him and were not present when it occurred.

The foregoing synopsis of the evidence will serve to give a sufficient understanding of the questions presented by the record for our decision. The ground chiefly relied on by the appellant for the reversal of the judgment of conviction is, that he was prevented from receiving a fair trial, because of error committed by the trial court in overruling his motion for a continuance of the case, which motion was supported by his affidavit setting forth the grounds therefor. In view of the apparent showing made by the affidavit of the appellant's unpreparedness for trial, we can but express our regret that we are precluded by the state of the record from considering the contention on its merits, which contains no order manifesting the trial court's ruling on the motion for a continuance, or that such ruling was excepted to by the appellant; nor does it show that the ruling was made a ground for the new trial moved for by the appellant in that court; and in the absence from the record of this necessary information this court is without authority to consider or determine whether the refusal of the continuance by the circuit court was error.

Our meaning is well expressed by the following excerpt from the opinion in the case of Fuson v. Comlth., 199 Ky. 804:

"To be effective justice must be swift. It is a matter of common knowledge that delays in such cases lessen both the chance and the effect of convictions, and it is the policy of the law to afford speedy trials. But it is of even greater importance for justice to be certain and sure, and in seeking speedy trials courts are careful to avoid being rushed into hasty conclusions by popular clamor, or by force of public sentiment, but seek to give to each side a fair hearing. With that object in view this court has not hesitated to reverse cases where it appeared that sufficient time and opportunity were not given the defendant and his counsel to properly prepare and present his defense; . . . as illustrating the rule reference might be had to the cases of Allen v. Comlth., 168 Ky. 325; Smith v. Comlth., 133 Ky. 532; Samuels v. Comlth., 154 Ky. 758; Stroud v. Comlth., 160 Ky. 503; Helton v. Comlth., 27 L. R. 1163; Miller v. Comlth., 197 Ky. 703. However, in this case the judgment of the court on the motion for a continuance does not appear in the record and

no exceptions were taken thereto by defendants and consequently it cannot now be considered. Criminal Code, sections 280-2; Bates v. Comlth., 13 R. 132; Blanton v. Comlth., 147 Ky. 814; O'Brien v. Comlth., 89 Ky. 364; Green v. Comlth., 26 R. 1227; Smith v. Comlth., 26 R. 1229.''

It will be found by an examination of the following cases and others that might be cited that in order for a convicted defendant to obtain, on appeal, a review of the ruling of the trial court in refusing a continuance, it is as essential that an error complained of as resulting from such refusal be shown of record to have been made a ground for a new trial in that court, as that the ruling of the trial court was duly excepted to when made. Risner v. Comlth., 133 Ky. 11; James v. Commlth., 197 Ky. 577.

The appellant's contention that the trial court committed reversible error in admitting evidence of an alleged dying declaration of the deceased, is wholly without merit. The statement of the deceased was made before and at the request of a deputy county court clerk of Owsley county, whose version of what was said and what occurred was wholly uncontradicted; and according to his testimony the declaration of deceased was made but a few hours before his death and following a statement from the latter, both before beginning and after closing the declaration, that he knew he had to die from his wounds received at the hands of the appellant, and, further, that he was without hope of recovery. In view of these facts appearing from the testimony of the deputy county court clerk, there can be no doubt that the statement of the deceased referred to was made in view of his impending death and when he was without hope of recovery; therefore its competency is beyond question.

The appellant's further contention of prejudice resulting to his substantial rights from the refusal of the trial court to exclude from the jury certain inflammatory statements made by counsel for the Commonwealth in argument to them, we think equally without merit. The statements were, in substance, that the jury should convict the appellant of murder and that conviction in such cases ''would open up schools and churches on Buffalo creek and stop moonshining on Buffalo creek.'' The record shows that the statement was objected to by counsel for appellant and that the court failed to exclude the

same from the jury, but it fails to show that an exception was taken by the appellant to his ruling. Aside from the latter fact, however, we are unable to see that this statement, improper though it was, could have prejudiced the appellant in any substantial right. There was no evidence whatever that the appellant was engaged in the moonshine liquor traffic. The only evidence on the subject of such traffic was brought out on the uncontradicted testimony of the appellant that on the day of the homicide he purchased a quart of such liquor from the deceased. At most the statement complained of was but an extravagant and unauthorized denunciation of the appellant by counsel, little calculated to have any effect upon the intelligence or understanding of the jury. So while the court erred in failing to exclude it from the jury, we are unwilling under all the circumstances to hold that the error compels the reversal of the judgment.

The appellant's final contention that the verdict was unsupported by and flagrantly against the evidence can hardly be said to be entitled to serious consideration. The evidence was undoubtedly conflicting, but if the jury saw fit to accept as true the testimony of the deceased and his two children instead of that of the appellant, which it was their right to do, it cannot be said that there was not abundant evidence to support the verdict returned by them.

Although the appellant complains of the instructions his counsel has failed to indicate any error contained therein; and our consideration of them convinces us that they correctly and elaborately gave the jury all the law applicable to the facts of the case.

Judgment affirmed.