## Miller v. Commonwealth.

(Decided April 25, 1933.)

Appeal from Rockcastle Circuit Court.

718

See, also, 241 Ky. 221, 43 S. W. (2d) 687; 242 Ky. 122, 45 S. W. (2d) 853.

C. C. WILLIAMS for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

R. H. Miller was indicted and convicted in the Rockcastle circuit court, and his punishment fixed at three years in the penitentiary. The decisive questions are: (a) The sufficiency of the indictment when tested by a demurrer; and (b) the propriety of the ruling of the trial court on the motion for a change of venue. The accusatory portion of the indictment endeavors to name the offense defined by section 1241a-1 Ky. Stats.

The instructions of the court authorized the jury to find Miller guilty and fix his punishment as prescribed by this section. The descriptive portion of the indictment sets forth facts constituting the offense defined by section 1186, Ky. Stats.

Section 1241a-1 reads:

"If any two or more persons shall confederate or band themselves together for the purpose of intimidating, alarming * * * or to rescue any person * * * or to do any felonious act, they, or either of them, shall be deemed guilty of a felony, and upon conviction shall be confined in the penitentiary not less than one nor more than five years."

In section 1186 it is written:

"If any officer or employee of any joint stock company, bank or corporation shall, with the intention of cheating or defrauding the joint stock company, bank or corporation, or any person doing business with it, erase, mutilate or alter any book or paper or evidence of debt, or any part thereof, owned by or in custody or under the control of the joint stock company, bank or corporation, or shall destroy the same, or shall make any false entry, or omit to make an entry in any such book or paper, he shall be confined in the penitentiary not less than two nor more than ten years."

In naming the offense in the indictment, this language is employed:

"The commonwealth of Kentucky accuses F. E. Miller, R. H. Miller, H. C. Taylor, W. H. Davis and Mrs. M. J. Miller of the crime of unlawfully and feloniously confederating or banding together in a conspiracy to defraud the People's Bank of Mt. Vernon, Rockcastle county and others and the public generally."

This language manifests an attempt to name the offense designated by section 1241a-1. It also shows that the purpose of the grand jury was to charge a confederating or banding together, under section 1241a-1, "to defraud the People's Bank" under section 1186. This view of the language quoted from the indictment is substantiated by the allegations in the descriptive portions thereof, setting out specifically the acts of the defendants as constituting the offense. An indictment must charge in the accusatory part the crime for which it is intended to prosecute the accused, and, in the descriptive part, it must state the facts which, if established by the proof, constitute the offense charged. Acree v. Com., 243 Ky. 216, 47 S. W. (2d) 1051, and cases cited. Section 1241a-1 creating the offense of confederating or banding together, does not give it a name, but merely describes it. An indictment thereunder in naming the offense should substantially employ the language of the statute, or should give a brief general description of the offense in the language of the statute, or set forth the particular acts which constitute it. Commonwealth v. Slaughter, 12 Ky. Law Rep. 893; Daviess Gravel Road Co. v. Com., 14 Ky. Law Rep. 812; Commonwealth v. Smith, 6 Bush, 263;

subsection 4 of section 124, Criminal Code. An indictment failing in the accusatory part, either to follow the statute or give a brief general description in its language or set forth the particular acts constituting the offense, is demurrable. The accusatory part of the indictment not only must name the offense charged, but it and the descriptive part must name the same offense. Gregory v. Com., 226 Ky. 617, 11 S. W. (2d) 432; Commonwealth v. Dishman, 232 Ky. 686, 24 S. W. (2d) 568; Patrick v. Com., 225 Ky. 202, 7 S. W. (2d) 1039; Grise et al. v. Com., 245 Ky. 220, 53 S. W. (2d) 362; Deaton and Boggs v. Com., 220 Ky. 343, 295 S. W. 167; Acree v. Com., 243 Ky. 216, 47 S. W. (2d) 1051; Lynch v. Com., 248 Ky. 210, 58 S. W. (2d) 408. In every indictment charging confederating or banding together under section 1241a-1 to commit an offense designated by section 1186, it is essential and required that both the accusatory and descriptive portions thereof name and describe the same offense.

The sufficiency of indictments under section 1241a-1 et seq. was determined by this court in Gregory v. Com., Acree v. Com., and Harr v. Com., 245 Ky. 278, 53 S. W. (2d) 575, and Grise v. Com., supra. They are applicable and controlling in the present case, and, when tested by them, the indictment herein does not name in the accusatory part a public offense designated by either section 1241a-1 or section 1186, Ky. Statutes.

A consideration and disposition of the action of the trial court in overruling the motion for a change of venue require us to review the facts. Miller filed his petition setting forth grounds as he conceived them, for a change of venue, supported by the affidavits of J. J. Felton and Neal Parrot. The commonwealth's attorney filed a response, traversing the statements of the petition. In support thereof, the affidavits of Hensel, Poynter, Hughes, and Mink were filed. Thereupon the motion was overruled and an order entered directing a jury summoned from another county. The latter order was entered in this language:

"It appearing to the court that civil actions and criminal prosecutions growing out of the insolvency of the People's Bank of Mt. Vernon, have occupied the major part of four terms of this court, that at the time of its suspension there were 1,200 depositors of said bank in Rockcastle county, that the

matters contributing to the bankruptcy and failure of said bank have attained county wide notoriety, that this court on similar prosecution has made a good, faithful effort to make up a jury; that *the court believes that every man and woman in Rockcastle county of sufficient intelligence to sit on a jury know all about these prosecutions and have formed an opinion on them,* it is ordered that Charles Carter and Robert Abney summon eighty qualified jurors from Laurel county for service in these prosecutions." (Italics ours.)

The petition of the defendant discloses that the sheriff, county treasurer, master commissioner, trustee of the jury fund, jailer, county judge, assessor, and 1,200 residents of the county, were depositors in the People's Bank of Mt. Vernon at the time it is charged in the indictment it failed because of the alleged fraud of R. H. Miller and his codefendants; that there had been previous trials in the Rockcastle circuit court, growing out of the bank's failure; that the 1,200 depositors in mass convention had adopted resolutions wherein the citizenship of the county were called upon "to blend their voice in an appeal for absolute vindication of the higher aims of the constituted authority," an appeal was therein made "to the citizenship of Rockcastle county for their support in the cause of such far reaching importance as not only to involve their own interest but of interest to the generations yet unborn." The resolutions made an appeal to the circuit judge "for the use of the higher power of his office," and urged him to "assert such powers against the perpetrators of this deplorable crime, commensurate with the crime committed." Also an appeal was made to the commonwealth's attorney "to prosecute the cases growing out of the failure of the bank." A further appeal was made to the Attorney General of the state "for the aid and assistance of the commonwealth" in "the effort to accomplish these ends." A plea was made to the banking commissioner "to protect them and the public from the unscrupulous men to whom had been entrusted the product of humble, but honest toil as well as funds for the development and maintenance of private and public enterprises." A copy of the resolutions was directed to be given to each taxpayer desiring it, and copy sent to each of the parties to whom the appeal was made. It was set forth in Miller's petition that the

residents of the county were antagonistic to him, and that, while the previous trials were occurring in the courthouse, they showed their antagonism by laughing, cheering, and making other demonstrations when a point was made against the defendant. The affidavits of Felton and Parrot corroborate the statments contained in the petition of Miller. The response of the commonwealth's attorney denying the allegations of Miller's petition was not verified. The affidavits of Hansel, Poynter, Hughes, and Mink do not deny the facts set forth in Miller's petition and supporting affidavits, but are more in the nature of a confession and avoidance. They state that "It is the opinion of each of the affiants that defendant can obtain a fair and impartial trial by the use of jurors selected even from this county, and who are not acquainted with the legal facts connected with the case. * * * But they especially state their belief that defendant can obtain and will obtain a fair and impartial trial by jurors selected from some other county who do not know anything about the facts and circumstances connected with this bank's failure, and in their judgment no intimidation will obtain during the trial * * * that they have confidence in the integrity and ability of the court to throw ample protection to the defendant and that he will safely guard the jury and officers of the court so that no improper influence will manifest itself to the prejudicial rights of the defendant at or during the trial and deliberation of this case, and they further believe that even though persons who have lost money in the failure of the said banking institution who may attend the trial will be quiet, reasonable and exhibit proper decorum through all of the proceedings of this case, that they do not believe any outward feelings or spite will be manifested during the trial of this case as will *prevent* the defendant from obtaining or securing a fair and impartial trial before any jury; they do not believe that a jury from another county will in any respect be influenced to the *prejudicial* rights of the defendant herein."

The burden was on the defendant to prove the ground upon which he relied as the basis of his motion for a change of venue. Estes v. Com., 229 Ky. 617, 17 S. W. (2d) 757. Where a defendant, in such case, files a petition verified by himself and supported by the affidavits of two credible persons, not kin to, nor of counsel of, the defendant, stating that they are acquainted

with the state of public feeling in the county and that they verily believe that the statements of the petition for such change of venue are true, and no affidavits or witnesses are introduced controverting the statements of the petition and supporting affidavits, the defendant is entitled to a change of venue, and the court has no discretion in the matter. Higgins v. Com., 94 Ky. 54, 21 S. W. 231, 14 Ky. Law Rep. 729; Greer v. Com., 111 Ky. 93, 63 S. W. 443, 23 Ky. Law Rep. 489. Section 1111, Ky. Statutes, authorizes an application by the commonwealth for a change of venue on a petition stating the reasons therefor, signed by the commonwealth's attorney, but, where a defendant files his verified petition supported by requisite affidavits, the same must be overcome by the affidavits or the testimony of the witnesses. A mere denial in the form of a statement of the commonwealth's attorney is not sufficient for that purpose. A mere reading of the affidavits of Hansel, Poynter, Hughes, and Mink discloses the fact they make no denial of the statements of the petition and the supporting affidavits. They assert their confidence in the court and their belief that defendant will not be prevented from obtaining a fair trial and that the jury in their opinion will not be influenced to the prejudicial rights of the defendant. It should be observed that they use the words "prevented" and "prejudicial rights" in a qualified sense, or in avoidance of the verity of the petition and supporting affidavits. On the peculiar and unusual state of facts presented by the petition of Miller and the resolutions therein copied, and the supporting affidavits filed by the commonwealth not in fact deynig the statements in the petition and the accompany affidavits with the statement of the trial judge himself that he "believes that every man and woman in Rockcastle county with sufficient intelligence to sit on a jury know all about these prosecutions and have formed an opinion of them," this case is plainly within the rule that, where a defendant files a verified petition and the requisite affidavits, and no counter affidavits are filed, and no witnesses are introduced, he is entitled to a change of venue, and the court has no discretion in the matter. Where there is evidence both in support and in the resistance of the motion, the granting or refusing the change of venue is within the discretion of the court. Vaughn v. Com., 204 Ky. 229, 263 S. W. 752; Hill v. Com., 232 Ky. 453, 23 S. W. (2d) 930. He has

a large discretion on conflicting evidence in granting or refusing a change of venue (Bradley v. Com., 204 Ky. 635, 265 S. W. 291), and ordinarily a refusal to grant a change of venue will not be disturbed without a clear showing of an abuse of discretion (Hall v. Com., 207 Ky. 718, 270 S. W. 5; Farrell v. Com., 207 Ky. 733, 270 S. W. 12; Schleeter v. Com., 218 Ky. 72, 290 S. W. 1075). Also the right of the accused to a change of venue or to the summoning of a special venire from another county, rests largely in the discretion of the trial court (Stamp v. Com., 200 Ky. 133, 253 S. W. 242; Holmes v. Com., 218 Ky. 314, 291 S. W. 383), and where the petition for a change of venue is accompanied by the supporting affidavits, but controverted, this court gives great weight to the discretion of the trial court from the fact he is presumed to know the situation from having associated with, or perhaps resided in the community among, the people who do jury service (Mansfield v. Com., 163 Ky. 488, 174 S. W. 16; Combs v. Com., 160 Ky. 386, 169 S. W. 879; Stroud v. Com., 160 Ky. 503, 169 S. W. 1021). A co-ordinate and inexorable rule is that every person accused of crime, however guilty he may be or whatever may be the nature of the crime charged against him, is entitled to a fair and impartial trial. This necessarily means a trial by a jury under conditions and circumstances not impregnated with such uncontrollable, acrimonious hostility as that described in the petition, the supporting affidavits, and the resolutions of the 1,200 depositors. The universality of the extremely clamorous hostility of the residents of the county, and its pervading power are shown by the petition, accompanying affidavits, and resolutions. The unity of sentiment is clearly shown by the language of the court as it is set forth in his order, immediately dealing with the trial of the case. It is axiomatic that in such environments, as thereby disclosed, any jury composed of individuals with the common nature of the average man, although residents of another county, could, and inevitably would, sense the presence of the pervading, hostile influences of the locality of the trial, and unconsciously be controlled unduly in the consideration of the evidence adduced, and in reaching its verdict, to such a degree as will prevent, at its hands, that character of fair and impartial trial which the law undertakes to guarantee to secure to every person accused of crime. Hudson v. Com., 220 Ky. 582, 295 S.

W. 886; Neely v. Strong, 186 Ky. 540, 217 S. W. 898. When the existence of such conditions is shown as in this case, the summoning of a jury from another county does not satisfy the law authorizing a change of venue, nor afford to the defendant the rights to which he is entitled.

It may be Miller is guilty, and should, and will, be punished, but, whatever may be the degree of his guilt, the law demands that he be given a fair trial by an impartial jury, according to the forms of law. No such trial, nor the semblance thereof, can be given him by a jury sitting in the surroundings and under the conditions disclosed by the facts presented. The showing herein is equivalent to that where the petition for a change of venue and supporting affidavits are not controverted, illustrative of which are Holmes v. Com., Higgins v. Com., and Greer v. Com., supra.

The demurrer to the indictment will be sustained, and the motion for a change of venue granted, if hereafter requested. Other questions are presented by briefs, but, for the errors indicated, the case must be reversed, and, since they may not appear on another trial, we decline now to consider them.

For the reasons indicated, the judgment is reversed for proceedings consistent herewith.