## Giles et al. v. Commonwealth.

(Decided Dec. 8, 1936.)

476

KENNEDY & KENNEDY, J. B. SNYDER, E. H. JOHNSON and C. B. SPICER for appellants.

B. M. VINCENT, Attorney General, and J. J. LEARY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The appellant, Estil Giles and C. C. Keyes, who were policemen of Harlan, have been convicted in the Pulaski circuit court of voluntary manslaughter and sentenced to twenty-one years' imprisonment for the killing of Tom Cornett.

On a Saturday night in Harlan the officers went to the front of a restaurant and liquor establishment, where Pearl Creech was very drunk on the street. Keyes told Creech he would have to go home or to jail. Creech promised to go home and started down the street. Giles had gone into the restaurant for a drink of water. Tom Cornett was standing by, entirely sober, according to the witnesses introduced by the Commonwealth, and he laughed or made some remark which seemed to anger Keyes. Whereupon Keyes told him he had better go home too, or something of the kind, to which Cornett responded that he was not drunk and had done nothing and was not going home. Then Keyes assaulted him, and while endeavoring to put the "twisters" (a chain handcuff) on him, Giles came out and the three engaged in quite a struggle, during which Keyes hit Cornett in the head with a pistol, which fell to the ground and was picked up by a bystander. While the two officers were taking Cornett across the street, he resisted and tripped Keyes. While Keyes was on the ground and Cornett partially down, and Giles participating in the melee, a pistol was fired. Some of the Commonwealth's witnesses said it was Keyes who fired it, and others that it was Giles. Cornett was removed to the hospital where he died during the night.

The defendants' proof was that Cornett was very drunk and interfered when Keyes sent Creech home.

Keyes offered to give him a chance to go home, and he refused. He then told him he was under arrest and would have to go to jail. Cornett resisted and he struck him with the twisters. He called to Giles, who came out of the restaurant, and in the scuffle Cornett grabbed Keyes' pistol from its holster. It fell to the ground and both men made an effort to get hold of it. Giles was a lifelong and intimate friend of Cornett, and he endeavored to persuade him to quiet down and to become peaceable, but he would not. As they went across the street toward the jail, Cornett tripped Keyes. He then began striking and kicking the officer while he was down. Giles tried to pull him off, and Cornett insisted that he turn him loose so he could kill Keyes. Keyes called to Giles to hit him (Cornett), and Giles drew his pistol for the purpose of protecting his fellow officer and prevent the prisoner's escape. Cornett grabbed hold of it, and while both men had their hands on the weapon it was discharged. The defendants introduced a number of witnesses to show that Cornett had been drinking for several hours and was drunk.

The grounds upon which a reversal of the judgment is asked are: (1) The court erred in granting the Commonwealth's motion for a change of venue; (2) in instructing the jury on the defendants' rights as peace officers; and (3) improper remarks of the Commonwealth's attorney.

The Commonwealth's attorney pro tem. filed a verified motion for a change of venue from Harlan county. In it he represented that there was such a state of excitement in the county and district on account of the killing of Cornett, and such prejudice prevailing against the prosecution of the case, that it appeared a fair and impartial trial could not be had there. It was stated that as the defendants were policemen and well connected, both officially and otherwise, in the county and the city of Harlan, a trial could not be had without prejudice to the rights of the Commonwealth and a fair and impartial trial could not be had. An amended "grounds for a change of venue" was later filed. It was stated in it that an important eyewitness, Ada Lee Bush, had received a threatening letter, admonishing her not to talk so much, to stay off the street, be careful about where she went and what she did, and that she had better not tell what she knew in the case, "for there was a way of getting rid of people." The letter also

asked that she meet an unidentified person at a designated place that night, and stated she would be taken out of town and could "get out of this." It was further stated that "the plaintiff states that it believes" that other witnesses "will be intimidated and threatened by persons interested for the defendants" and will be afraid to testify. It was also charged that there were "certain silent forces and influences co-operating to the destruction and prejudice of this law suit, as it verily believes." This amended motion bore the affidavits of Columbus Cornett, father of the man killed, and of A. B. Cornett, to the effect that they had read the "amended grounds for a change of venue and in their opinion and belief the conditions obtaining in Harlan, as set out therein, prevent the Commonwealth having a fair and impartial trial." The woman's affidavit related that she had been summoned as a witness for the Commonwealth and had received a letter containing the admonitions and warnings stated in the motion; also that she had been told by many people to stay off the streets. Late Sunday night two men had come to her room and wanted to talk to her, but she refused to let them enter, and was greatly disturbed. She had torn up the letter.

A special demurrer, based upon failure to give notice before the filing of a motion, although it was given immediately after being filed, was overruled. The defendants filed their affidavits in opposition. Keyes deposed, among other things, that the only relatives he had in the county, other than his wife and three small children, were three distant cousins; he had been in the county since 1923 following the trade of a barber; his acquaintance was limited to the city of Harlan; he had practically no acquaintance whatever in the county; he had been a policeman of Harlan since June, 1934; there were a great many witnesses in the case and he had no money or means to pay the expenses of witnesses to another county. He denied knowing Ada Lee Bush, except that she was a clerk or waitress in the liquor store, in front of which the killing occurred. He had no knowledge whatever of any threatening letter being written to or received by her. While her name was on the indictment, she had not appeared before the grand jury when the killing was under investigation, and the defendants did not know what she saw, or claimed to have seen, or whether she knew more than the 30 or 40 others who were present and saw what took place. The

affiant was at home ill on the day the letter was said to have been received, and had been confined there for several days before that time.

Giles stated in his affidavit that it was necessary to his defense that he have present 25 to 50 witnesses, most of whom were at or near the scene of the killing; that it would be almost impossible for him to have his witnesses present at a trial elsewhere than at Harlan; that he was not financially able to bear the expense of keeping the witnesses or of employing local lawyers in another county. He had no property, and his small salary as a policeman had been barely enough to support himself, wife, and child. His people were from Virginia, and he had very few relatives in Harlan county. He is a young man and had never had any business connections or relations with the public, except as a policeman for about a year. His acquaintance outside of the city was very limited. He did not know what Ada Lee Bush would testify, and neither he nor any of his friends, of whom he had made inquiry, knew anything about any threatening letter having been written to her. So far as he knew, the witness could not testify to anything more than could many others who were near the scene.

The court having indicated an intention to grant the motion for a change of venue to an adjoining county, the defendants made objection and filed affidavits in support. The court thereupon sent the case to Pulaski county. Proper exceptions were reserved by the defendants.

Section 1109 of the Statutes provides that in criminal prosecutions either the Commonwealth or the defendant may have the trial in another court, if it appears that the applicant cannot secure a fair trial in the county where the case is pending. Section 1110 specifies the manner of proceeding by the defendant, requiring that his verified petition shall be supported by affidavits of two creditable persons who are not his counsel or kin to him. Section 1111 provides that an application by the Commonwealth shall be by petition, stating reasons why the change of venue should be granted. It must be signed by the Commonwealth's attorney and the application heard and determined as provided in section 1110. It is not required that an application by the Commonwealth shall be supported by affidavits, as it is when made by a defendant. Commonwealth v. Caldwell, 236 Ky. 349, 33 S. W. (2d) 1.

The general statement of prejudice prevailing against the prosecution is not rested upon any representation of acquaintance or knowledge of such conditions by the Commonwealth's attorney pro tem., as is required by the law. The allegations as to the witness Ada Lee Bush are not that the letter was written by or in behalf of the defendants, or the approach made by them or in their behalf. For aught that appears it may have been written by some one interested in the prosecution. While, of course, it could not be considered on the motion for a change of venue, as a matter of fact, the evidence of this witness was cumulative and she was in position to see only the first struggle. The petition for a change of venue was controverted, and facts were pleaded which negatived all reasons for granting the application. It seems to us that the showing made by the Commonwealth, particularly in the absence of any evidence to sustain the general charges, was not sufficient to authorize the granting of the application and the court committed error in doing so. McDaniel v. Commonwealth, 246 Ky. 688, 56 S. W. (2d) 340; Miller v. Commonwealth, 248 Ky. 717, 59 S. W. (2d) 969.

Other than that given upon the theory of accident, the only instruction favorable to the defendants was in the form of that approved in Keeton v. Commonwealth, 108 S. W. 315, 32 Ky. Law Rep. 1164, published as form 750 in Hobson on Instructions as (d). We do not think this instruction was applicable to the facts of this case. In the Keeton Case, the officer had merely sought to quiet a drunken man and was attacked. Here these officers had gone further and had placed the man under arrest. He was violently resisting as all witnesses testified. The right of officers under the circumstances disclosed here was to use such force as was necessary or appeared at the time in the exercise of a reasonable judgment to be necessary to overcome the forcible resistance of their prisoner, even to the taking of his life, although he had been arrested for a misdemeanor. Their right was not limited to the single ground of self-defense. Hatfield v. Commonwealth, 248 Ky. 573, 59 S. W. (2d) 540; Mays v. Commonwealth, 260 Ky. 235, 84 S. W. (2d) 20.

It is not necessary to notice the improper argument of the Commonwealth's attorney.

The judgment is reversed.