# Scott v. Commonwealth.

June 10, 1947.

Rehearing denied October 14, 1947.

Guy L. Dickinson, Special Judge.

J. B. Johnson, T. E. Mahan and L. O. Siler for appellant.

Eldon S. Dummit, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE DAWSON—Reversing.

Henry Scott was convicted of voluntary manslaughter and sentenced to 21 years in the penitentiary. This is the second appeal in this case. On the former appeal we reversed a judgment of conviction of manslaughter. See Scott v. Commonwealth, 301 Ky. 127, 190 S. W. 2d 345. Therein we directed the lower court, if the evidence was the same upon another trial, to direct the jury to return a verdict of not guilty.

The facts are fully set out in our former opinion and need not be repeated in detail.

Appellant's chief ground for reversal is that the evidence on the last trial was substantially the same as that on the former trial and that "the law of the case" required the trial court to direct a verdict of not guilty.

Other grounds are urged, but in view of the conclusion we have reached it will not be necessary to consider them.

Shortly after midnight on December 28, 1944, the appellant, who was then a night policeman of the City of Williamsburg, shot and killed Wiley Ball. There have been three trials in this case, the first resulting in a hung jury and the last two resulting in verdicts of guilty and a sentence of 21 years in the penitentiary on each occasion.

At the time of the homicide appellant was 48 years of age, and the deceased was a young man about 20 years old, who had for a period of several years been addicted to excessive drinking of intoxicating liquors, becoming boisterous, quarrelsome and abusive on such occasions. Peace officers had several times attempted to arrest Ball when he was intoxicated, and on such occasions he resisted arrest. His reputation was known to appellant.

About 11 o'clock on the night in question Ball was in a restaurant in Williamsburg raising a disturbance. When the restaurant closed about midnight the appellant told Ball to get off the streets and go home. He made his rounds in a patrol car and came back to a corner about half a block from this restaurant, and upon observing Ball in the street with some other boys, arrested him. Ball broke away, cursing appellant, and ran off. Appellant then went to the home of a constable, Isom Alder, and requested his assistance for the purpose of placing Ball under arrest. They located Ball and Alder told him to go with appellant, but he ran away again. The officers pursued him, firing two shots into the air, but Ball escaped. Some time later he came back to the Alder home, created a commotion, and then entered an automobile belonging to the constable. When the officers returned Mrs. Alder told them where Ball was. He again resisted arrest, resulting in the killing, the details of the evidence being set out in our former opinion.

The only question we are concerned with here is whether there was any substantial change in the testimony on the second trial. The Commonwealth vigorously contends that there is new and material evidence, but

we are unable to agree. There is new evidence to the effect that at the time of the killing the deceased had the sleeve of his overcoat over his left hand which, it is claimed, refutes the wielding of a knife as claimed by appellant.

The clothes which deceased was wearing at the time were filed as exhibits on the second trial, and it is claimed they show the location of the wounds and that this indicates the deceased did not have his arm upraised, but across his breast for protection. There is some difference in appellant's own testimony on the last trial in that he did not claim that the deceased slapped him with his right hand, as he had charged on the former trial. One new witness was produced who denied that Ball was creating a disturbance in the restaurant, as claimed by appellant, but of course this has no bearing on the facts at the time of the killing an hour or two later. In the main the Commonwealth's contention here, as it was before, is that the position of the deceased's body at the time of the shooting shows that he was shot not in a fighting position or getting ready to attack appellant. We carefully considered the facts in this connection on the first appeal and fail to find any new evidence which is materially different from the evidence we have considered before. It is claimed that the witness Alder substantially changed his testimony, but we do not think so as all material facts he testified to the first time were brought out on his cross examination.

Conceding that there is some new evidence, it all related to the same general circumstances and did not change the issues involved on the first trial.

We have often said that the "law of the case" is binding upon the lower court. In Johnson v. Commonwealth, 225 Ky. 413, 9 S. W. 2d 53, we said: "It is sufficient to say that the evidence on the second trial was substantially the same as that adduced on the first, with some additional testimony introduced by each party. The commonwealth was able to strengthen its case somewhat, especially in the matter of identification of the appellant as the slayer, and the appellant produced a new witness to the shooting. But the new evidence related to the same general circumstances, and did not

change the issues involved on the first trial, or work a change of the character to avoid the application of the doctrine that the opinion on a former appeal constitutes the law of the case thereafter.'' And to the same effect see Barton v. Commonwealth, 240 Ky. 786, 43 S. W. 2d 55, and Coots v. Commonwealth, 299 Ky. 619, 186 S. W. 2d 638.

In Mays v. Commonwealth, 266 Ky. 691, 99 S. W. 2d 801, 803, we find a case which is very similar to the one under consideration. There we considered the rights of an officer when dealing with a rebellious prisoner and said: ''While a peace officer has limitations placed upon his activities in discharging his duties, he is often confronted with grave danger. The law gives him the right of self-defense. It also makes it his duty to prevent the escape of his prisoner by the use of such means as may be necessary or reasonably appears to him at the time to be necessary, even to the extent of taking his life, if such extreme act appeared to be necessary in the exercise of a reasonable judgment. Hatfield v. Commonwealth, 248 Ky. 573, 59 S. W. 2d 540; Mays v. Commonwealth, 260 Ky. 235, 84 S. W. 2d 20; Giles & Keyes v. Commonwealth, 266 Ky. 475, 99 S. W. 2d 455.''

What we said there applies here, and in the light of these principles, and the fact that we are unable to find any evidence of the character required to affirm this judgment, it is our duty to reverse it.

Judgment reversed for proceedings consistent herewith.