CASE 5—INDICTMENT—DECEMBER 13.

# Wilkerson v. Commonwealth.

APPEAL FROM ALLEN CIRCUIT COURT.

1. CHANGE OF VENUE—To entitle the defendant in a criminal case to a change of venue, the *onus* is upon him to at least make a *prima facie* case. The mere filing of a petition, without either affidavits or oral testimony to support it, is not sufficient. Whether the filing of two affidavits is still required under the statute to make a *prima facie* case is not determined.

2. CONTINUANCE—The refusal to grant a continuance because of the absence of a witness was not prejudicial, as the evidence of the absent witness would have been merely cumulative.

3. REVERSIBLE ERRORS—As no exception was taken at the time to the action of the court in allowing a jury to separate, and the question

was first presented in the motion for a new trial, this court can not consider it.

4. INSANITY—DRUNKENNESS—As there was no pretext that the accused was insane, but his condition arose merely from temporary drunkenness, the court properly refused to instruct the jury that they must acquit if they believed "he was laboring under such a defect of reason as not to know the nature of his act, or right from wrong, or had not sufficient will power to control himself."

5. EVIDENCE—Upon a trial for murder, it is competent to prove drunkenness as bearing merely upon the existence or non-existence of malice.

PORTER & McQUOWN FOR APPELLANT.

On an application by the accused for a change of venue, it is not necessary to accompany the application with the affidavits of two credible witnesses to the effect that the accused can not have an impartial trial. (Gen. Stat., chapter 12, article 4, section 1, Johnson v. Commonwealth, 82 Ky., 119.)

P. W. HARDIN FOR APPELLEE.

No brief in record.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The appellant, Monroe Wilkerson, is under sentence of death for the killing of Berry Manion.

The deed was unprovoked and without excuse. The accused went to a Sunday-school exhibition intoxicated, and was there guilty of boisterous and bad conduct. The deceased reproved him for it, and tried, by words, to quiet him. He, however, persisted, and the deceased then threatened to go after an officer and have him arrested if he did not behave. This he failed to do, and upon Manion starting after the officer the accused shot him in the back and killed him. It is claimed that the lower court erred in these respects : First. In refusing to grant the appellant a change of venue. Second. In overruling a motion to continue the case. Third. In permitting four of the

jurors, after they had been selected as such, but be-
fore they were sworn, and during an adjournment of
the court for dinner, to go at large and mingle with
the crowd, instead of putting them in charge of an
officer.   Fourth.  In misinstructing the jury.

Prior to April 1, 1880, the trial court was bound
to grant an accused a change of venue to another
county, provided he, after reasonable notice to the
prosecuting attorney, presented his sworn petition,
stating that he could not obtain a fair trial in the
county where it was pending, owing to the prejudice
against him or his cause, and accompanied it with
the affidavits of at least two credible persons, not of
kin to nor of counsel for him, stating that they were
acquainted with the state of public opinion in the
county objected to, and that they believed the state-
ments of the petition were true.   This was all he was
required to do, and when done the trial court had
no discretion in the matter.   At the time above-
named, however, the law was amended by provid-
ing: "The court shall, on said motion, hear all
witnesses that may be produced by either party, and,
from the evidence, determine whether or not the ap-
plicant is entitled to a change of venue."   This does
not, in terms at least, dispense with the filing of
the two affidavits by way of making a *prima facie*
case.   It is urged, however, that, as the question is
to be determined upon "the evidence" which may
be offered, the reason is wanting for the production
of the affidavits, and that, therefore, this much of the
law fails, and they are not required.   In other words,
that the amendment to the law operated as a vir-

tual repeal of this much of it. Undoubtedly, if an accused, under the law as amended, presents his petition, accompanied by the two or more affidavits, and no witnesses are introduced in court by either party, the change of venue should be granted. He then has a *prima facie* case. The question is not, however, presented in this case whether, if he presents his petition but no affidavits, but supports it by the evidence of two or more witnesses in open court, the change of venue should be granted, because here the appellant merely filed his petition, and offered neither affidavits nor witnesses in support of it. The right to the change of venue is a statutory one. The *onus* is upon the accused to at least make a *prima facie* case, and while in this instance proper ground may have existed for it, it was not shown, and the lower court could not, therefore, grant it, and regard the law.

The continuance was asked by reason of the absence of five witnesses. They were, however, all present at the trial, save one—Lucas. The affidavit for the continuance stated that he would testify, if present, that the accused and the deceased were friendly, and that the appellant did not know what he was doing at the time of the killing. It also stated, however, that he would prove the same by three of the other witnesses named in the affidavit, and they were present at the trial, and two of them testified. It was clearly proven that the deceased and the accused were friendly, and the testimony which was introduced showed the condition of the appellant at the time of the killing. The evidence of the

absent witness would, therefore, have been merely cumulative, and its non-introduction did not prejudice the accused.

No objection was made, or exception taken at the time to the action of the court, as to the four jurymen. The question was first presented in the motion for a new trial. We can not, therefore, consider it.

Proper instructions were given to the jury as to both murder and manslaughter. They were also properly instructed as to the reasonable doubt, and were also told that they could not convict the accused of murder unless they believed, from the evidence, beyond a reasonable doubt, that he acted "with malice aforethought." This embraced in substance the instruction asked by the accused upon this subject and which was, therefore, properly refused.

The court was asked by the appellant to also instruct the jury to find him not guilty, if they believed from the evidence that when he did the killing he was laboring under such a defect of reason as not to know the nature of his act, or to know right from wrong, or had not sufficient will power to control himself. There was no claim or pretext that the accused was insane. The evidence showed, beyond all question, that his condition arose merely from temporary and voluntary drunkenness. It was competent to prove his condition, not because intoxication *per se* excuses crime, but because it, with other circumstances, may show an absence of malice. It is admissible in evidence merely as one fact bearing upon the existence or *non*-existence of that deliberate intent essential to the crime of murder. Such an instruction was

vol. 88—3

disapproved by this court in the case of Buck-hannon vs. Commonwealth, 83 Ky. Rep., 110, where the cause of the killing was similar to this one ; and we see no reason for departing from the rule laid down in that case, but, upon the contrary, the proper protection of human life, and the prevention of crime, require that it should be strictly followed.

Judgment affirmed.