## Smith v. Commonwealth.

### (Decided June 19, 1917.)

### Appeal from Floyd Circuit Court.

1. Criminal Law—Continuance—Affidavit For—Deposition of Absent Witness—Impeachment.—Where the trial does not take place at the indictment term, it is not necessary for the Commonwealth, in order to avoid a continuance, to admit the truth of the defendant's affidavit for a continuance, but merely that the witness, if present, would testify as alleged in the affidavit. When this is done, and the defendant is permitted to read such affidavit as the deposition of such absent witness, the Commonwealth has the right not only to controvert the affidavit by other evidence, but to impeach such absent witness to the same extent as if he were personally present.

2. Criminal Law—Evidence—Statement of Accused—Admission.— A statement of the accused, made immediately after the homicide, that the person he had under arrest was not dead, "but that son-of-a-bitch out there was," was admissible in evidence as tending to show that a crime had been committed and to establish defendant's connection with the crime.

3. Criminal Law—Homicide—Exercise of Authority—Arrest— Forcible Rescue by Third Party—Right of Officer.—Though an officer, in arresting one guilty of a misdemeanor, is never justified in killing merely to effect the arrest or to prevent his escape by flight, yet, if the misdemeanant be under arrest and attempts

by force or violence to overcome the officer and effect his escape, the officer's right to kill is not limited to the single ground of self-defense, but he may use such force as is necessary, or reasonably appears to him to be necessary, but no more, to overcome the forcible resistance of the prisoner, and, if, under these circumstances, he shoots and kills the prisoner, the killing will be excusable, if the officer could not, or it reasonably appeared to him that he could not, otherwise overcome such forcible resistance; and the same rule applies to a third party who is attempting by force or violence to rescue the prisoner.

4. Criminal Law—Homicide—Exercise of Authority—Arrest—Forcible Rescue by Third Party—Right of Officer—Instruction.— Where, on a criminal prosecution of an officer for killing a person, who, the evidence showed, was attempting by force or violence to rescue a misdemeanant who had been arrested by the officer, it was error not to instruct the jury that the defendant had the right to use such force as was necessary, or reasonably appeared to him to be necessary, but no more, to overcome such force or violence on the part of the deceased in his efforts, if any, to effect the release of the prisoner; and, if, under these circumstances, the defendant shot and killed the deceased the killing was justifiable, and the jury should acquit the defendant if they believed from the evidence that the defendant could not, or it reasonably appeared to him that he could not, otherwise overcome such force or violence, if any, on the part of the deceased.

HARKINS & HARKINS for appellant.

M. M. LOGAN, Attorney General, and O. S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Lee Smith was convicted of manslaughter and given an indeterminate sentence of from twenty years to twenty years and eleven months in the state reformatory. He appeals.

Briefly stated, the facts are as follows: On May 3, 1916, Sun Brothers exhibited their circus in the town of Prestonburg. On the day before, the council of Prestonburg met and appointed Lee Smith a deputy marshal to assist in preserving order on the day of the circus. Among those who attended the circus were Dave McGuire, Joe Add Turner and Paul Wallen, all of whom had been drinking, though McGuire and Wallen both say that they had not taken a drink since twelve o'clock noon. During the day Lee Smith had arrested Crow

Sloan. At the close of the circus performance in the afternoon Dave McGuire came down the street and engaged in conversation with Smith. According to the evidence for the Commonwealth, McGuire asked Smith if he had gotten anybody but Crow Sloan that day. Smith replied that he had not. McGuire then said: "Did you fellows hurt him pretty-bad?" Smith replied that they had not hurt him at all. About this time Wallen approached and said to McGuire, "Let's go." McGuire answered, "In a minute." As McGuire turned and started away Smith struck him with his fist and knocked him down. When McGuire started to get up Smith struck him over the head with his pistol, again knocking him down. Thereupon Joe Add Turner, his half brother, approached, with both hands up. Some of the witnesses state that Turner, as he approached said, "Don't kill him." Others say that Turner said, "I will take care of him," while others say that Turner said, "Don't kill him, I will help you take him to jail." When Turner was about six or eight feet distant, Smith turned and shot him. Turner died from the result of the shot.

According to defendant's evidence, he knew McGuire but did not know Turner at all. Just before the difficulty McGuire, who had been drinking, was swearing in the presence of some women. Defendant told him to go home. McGuire said, "By God, I will go if I want to." Defendant told him to go on, and McGuire proceeded towards his home. In about five minutes McGuire returned and, addressing defendant, said, "What did you hit Crow Sloan for?" Defendant told him that was nothing to him, and to consider himself under arrest. Throwing his hand to his hip pocket, McGuire said, "You God damned son of a bitch, you can't arrest me." Thinking that McGuire was aiming to pull his gun, defendant struck him in the face, knocking him down. McGuire then grabbed for defendant's gun and caught hold of it. Defendant wrenched the gun out of McGuire's hands and hit him with it. At that time Turner came running in and grabbed hold of both of defendant's arms. Defendant then ran back from Turner, and as Turner made for him again he shot Turner. Defendant thought that Turner meant to take his gun and kill him. When shot, Turner fell right on his face, and defendant then took McGuire to jail. When defendant left he did not know that Turner was dead.

Defendant filed motion and affidavit for a continuance, based on the absence of Willard Hamilton, who, it was

alleged, if present, would testify that very soon after McGuire was lodged in jail McGuire said: "That if the damn son of a bitch hadn't shot as quick as he did, he wouldn't have shot; that he and his brother would have shot him" (referring to the defendant). After this affidavit was read as the deposition of Willard Hamilton, the trial court permitted the Commonwealth to impeach Hamilton by showing that his reputation for truth and morality was bad. This was not error. The trial did not take place at the indictment term. Hence, it was not necessary for the Commonwealth to admit the truth of the affidavit. All that was necessary for the Commonwealth to admit, in order to avoid a continuance, was that the witness, if present, would testify as alleged in the affidavit. When this was done and the defendant was permitted to read such affidavit as the deposition of such absent witness, the attorney for the Commonwealth had the right not only to controvert the affidavit by other evidence, but to impeach such absent witness to the same extent as if he were personally present. Criminal Code, section 189; Tyree v. Commonwealth, 160 Ky. 706, 170 S. W. 33.

Another error urged for reversal is the admission of certain evidence given by Sallie Salisbury. It appears that this witness was only a short distance from the place of the homicide and ran out of the house as the defendant and McGuire were coming down the street. She says that she grabbed hold of a man that was bloody and asked the man that had hold of him to let him lie down, as he was killed. The man who had hold of him said that he was not killed, "but that son of a bitch out there was." Since the testimony in question was related to a statement made by the defendant, which tended not only to show that a crime had been committed, but to establish defendant's connection with the crime, there can be no doubt of its admissibility.

Besides instructions on murder and manslaughter, the trial court gave two instructions covering defendant's duties as a marshal and his right to act in self-defense. These instructions are not attacked, but it is insisted that the court should have instructed the jury on defendant's right to use such force as was reasonably necessary, or reasonably appeared to him to be necessary, to overcome the forcible rescue of the prisoner by the deceased. While it is true that an officer, in arresting one guilty of misdemeanor, is never justified in killing merely to effect the arrest or to prevent his escape by flight,

yet, if the misdemeanant be under arrest, and attempts by force and violence to overcome the officer and effect his escape, the officer's right to kill is not limited to the single ground of self-defense, but he may use such force as is necessary, or reasonably appears to him to be necessary, but no more, to overcome the forcible resistance of the prisoner; and, if under these circumstances, he shoots and kills the prisoner, the killing will be excusable if the officer could not, or it reasonably appeared to him that he could not, otherwise overcome such forcible resistance. Stevens v. Commonwealth, 124 Ky. 32, 98 S. W. 284; Reed v. Commonwealth, 125 Ky. 126, 100 S. W. 856. And, in our opinion, there is every reason why the same rule should apply to a third party who is attempting by force or violence to rescue the prisoner. We, therefore, conclude that the trial court erred in failing to instruct on this phase of the case.

On another trial, the court, in addition to the ordinary instruction on self-defense, should give the following instruction: If you believe from the evidence that Mc-Guire was drunk and disorderly in the presence of defendant, the latter, as deputy marshal of the town of Prestonburg, had the right to arrest him without a warrant, and if you further believe from the evidence that after defendant had placed McGuire under arrest, the deceased attempted by force or violence to effect Mc-Guire's release from defendant's custody as an officer, the defendant had the right to use such force as was necessary, or reasonably appeared to him to be necessary, but no more, to overcome such force or violence on the part of the deceased in his efforts, if any, to effect the release of McGuire; and, if, under these circumstances, he shot and killed the deceased, the killing was justifiable, and you will acquit the defendant if you believe from the evidence that the defendant could not, or it reasonably appeared to him that he could not, otherwise overcome such force or violence, if any, on the part of the deceased.

Judgment reversed and cause remanded for a new trial consistent with this opinion.