[Crim. No. 1982. Second Appellate District, Division Two.—October 21, 1930.]

THE PEOPLE, Respondent, v. WILLIAM ERNEST HARVEY, Appellant.

Charles J. Orbison for Appellant.

U. S. Webb, Attorney-General, and W. R. Augustine, Deputy Attorney-General for Respondent.

SCHMIDT, **J.,** *pro tem.*—Appellant appeals from his conviction in the trial court of murder in the second degree and from a judgment thereon and the order denying his motion for a new trial.

The killing is admitted. The facts and circumstances surrounding the killing rest entirely upon the extrajudicial statements of appellant and his wife given the police and the testimony of appellant and his wife given at the trial. There is substantially no conflict and very slight variance in the statements.

In the year 1927, the victim, Raymond Gottshal, and Lillian Harvey, wife of appellant here, were sweethearts and in the latter part of that year lived together as man and wife without the formality of marriage. At that time Mrs. Harvey's name was Lillian French, but she was known and recognized by the name of Lillian Gottshal. Gottshal and Mrs. Harvey lived together until April or May, 1929, when Mrs. Harvey left Gottshal. In the latter part of the year 1928 Mrs. Harvey purchased with her own funds, taking title in the name of Lillian Gottshal, a lot located at Eighty-ninth and Denker Streets in the city of Los Angeles, upon

which was built a double bungalow. After its completion Raymond Gottshal and Lillian French, then known as Lillian Gottshal, moved into that part of the bungalow facing Eighty-ninth Street, and continued to live there until the separation hereinbefore stated. Lillian B. French, then known as Lillian B. Gottshal, at that time owned certain furniture which was placed in the house and was part of the furniture used by her and said Gottshal.

In June, 1929, said Lillian B. French commenced to "keep company" with appellant and on September 1, 1929, married him, and continued to live with him as husband and wife up to the time of the fatal affray involved herein.

In the latter part of 1929 Lillian Harvey made efforts to eject Gottshal from the premises on Eighty-ninth Street and for that purpose transferred the title to a niece, who brought legal proceedings to oust Gottshal, which proceedings were still pending at the time of the affray. Between the time of the marriage of Mr. and Mrs. Harvey and the affray which resulted in the death of Gottshal, Gottshal had made numerous threats against appellant and his wife. No good purpose can be gained by setting out these threats in detail. In spite of these threats appellant and his wife on the evening of March 1, 1930, drove to the Eighty-ninth Street premises in a Ford truck, believing Gottshal out of the city. Finding the house locked, a window in a French door was broken by appellant with a piece of pipe procured from his truck, which piece of pipe was claimed by appellant to be used by him to separate bundles in his delivery and collection of laundry, he being engaged in the laundry business as a route man. After breaking the window appellant entered through the window and his wife went around to the front of the house carrying the iron pipe, as stated by her, with the purpose of putting the same on the truck; but before she reached the truck appellant had opened the front door and Mrs. Harvey dropped the iron pipe near the walkway which led from the porch to the sidewalk. Appellant and Mrs. Harvey then proceeded to collect the articles claimed by Mrs. Harvey to belong to her and to place them on the truck. They had hardly completed the removal of the articles to the truck when the decedent, Gottshal, drove up in another truck, jumped out and rushed immediately toward appellant, who was at that time standing on the

walkway, either by his truck or near same, used an opprobrious epithet in addressing appellant and therewith struck appellant on the jaw, staggering him by reason of the force of the blow; almost simultaneously with this act of Gottshal Mrs. Harvey shouted to appellant, "Look out for the gun, he has got a gun!" At this particular time the iron pipe was lying on the ground where left by Mrs. Harvey. Appellant picked up same and struck Gottshal with it. He, Harvey, testified that he feared for his own life as well as the life and safety of his wife. As a matter of fact Gottshal did not have a gun on his person at the time, but it was undisputed that he usually carried his gun on Saturday evenings at the time he was making his laundry collections (the affray here involved took place on a Saturday evening). There is no dispute that Gottshal possessed a gun, same having been theretofore given to him as a Christmas present by Mrs. Harvey while she was living with him. Following the blow with the pipe the two men continued to fight and struggle over the possession of the pipe, resulting in appellant's being struck several times on the legs by Gottshal while the pipe was in his possession. As the struggle continued the pipe was abandoned and the men fought into the house, where they finally ceased fighting when Gottshal requested a drink of water. Upon his release by appellant Gottshal ran into his bedroom, whereupon Mrs. Harvey shouted to appellant that Gottshal was going after his gun and for appellant to run, whereupon both appellant and Mrs. Harvey ran out of the house followed shortly by Gottshal, who, after reaching the door, fired four shots, none of which took effect. Appellant disappeared and after Gottshal, with the assistance of a neighbor, had carried all the furniture and other articles back into the house Mrs. Harvey drove the truck away. Gottshal, in company with a neighbor, went to a doctor to have his wound dressed. Upon leaving the doctor he became unconscious, was taken to his home and subsequently to the hospital, where he died three days after the affray. Appellant had not known or seen Gottschal until the time of the affray. Appellant further testified that he had no intent to kill Gottshal.

Error is claimed first in the insufficiency of the evidence to warrant a conviction even of manslaughter, it being claimed that appellant acted in self-defense, and secondly,

upon errors committed in failing to instruct the jury as requested by appellant and in the giving of certain instructions.

■ Appellant claims that the general instruction on circumstantial evidence should not, under the facts of this case, have been given. With this we agree. The case at bar is very similar to *People* v. *Smith,* 164 Cal. 451, where at page 463 [129 Pac. 785, 790], it is said:

"The court instructed the jury upon the distinction between direct and circumstantial evidence. There was not only direct evidence of the homicide in this case but it was admitted and there was therefore no occasion to instruct upon the character and value of circumstantial evidence."

■ Appellant predicates error on the wording of some of the instructions given by the court on the subject of self-defense and claims also that some of the instructions on self-defense as given should not have been given, and that certain instructions on that subject matter requested by appellant and refused by the court should have been given. A recital of these instructions in detail cannot be of any benefit. It is sufficient to say that we have examined each and all of these instructions carefully and find that the trial court correctly instructed the jury on self-defense and further that the substance of the instructions refused was sufficiently embodied in the instructions given, and that appellant could not have been prejudiced by the giving of any of the instructions to which complaint is directed.

■ Further error is claimed in the failure of the court to give two instructions requested by appellant to the effect that the evidence was insufficient to warrant a finding that appellant was guilty of murder in either the first or second degree, and in giving full instructions concerning murder and its various degrees. A careful reading of the entire transcript leads to the conclusion that there was no intent to kill and no malice shown so as to make the killing murder either in the first or second degree.

■ However, the evidence clearly supports a finding that appellant was guilty of manslaughter. Neither the error in giving the instruction on circumstantial evidence nor the error in the refusal to instruct that the evidence was insufficient to warrant a conviction of murder in either degree and the giving of the instructions on murder, in view of

the entire record, is of such character as to warrant the granting of a new trial.

We find no error either in the giving or failing to give other instructions called to our attention by appellant.

Following the Supreme Court in its interpretation of section 1181 of the Penal Code, as stated in *People* v. *Kelley*, 208 Cal. 387 [281 Pac. 609], it is ordered that the judgment of the lower court of murder in the second degree be modified, and the cause remanded to the trial court with directions to enter a judgment against appellant finding him guilty of manslaughter, and thereupon to pronounce judgment accordingly.

Works, P. J., and Craig, J., concurred.