# Johnson v. Commonwealth

(Decided May 14, 1937.)

556

BOND & BOND for appellant.

B. M. VINCENT, Attorney General, and J. M. CAMPBELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

Between 8:30 and 9 p. m. Monday, July 27, 1936, Gus Johnson, a deputy constable, in the city of Martin, Floyd county, Ky., shot and killed Alton Patton, a young man, whom Johnson did not even know.

By indictment returned forty-two days later, Johnson was charged with willful murder and when tried nineteen days after the return of the indictment, before a jury brought from Pike county, he was convicted of manslaughter and his punishment fixed at confinement in the penitentiary for five years.

### Change of Venue.

Defendant, after timely notice, filed an eight-page and personally verified petition for a change of venue to

some other county and in support of it filed the affidavits of eight citizens of Floyd county, not akin to or of counsel for defendant, setting forth their acquaintance with public opinion and giving reasons because of which defendant would not be able to secure a fair trial in Floyd county. The commonwealth denied this categorically, but it filed no affidavits in support of its denial.

Under section 11 of Const. and section 1109 et seq., Ky. Stats., defendant had a right to change of venue upon this petition and supporting affidavits, and the court erred in denying it, since the commonwealth offered no evidence to the contrary. Holmes v. Com., 218 Ky. 314, 291 S. W. 383; Hunter v. Com., 208 Ky. 466, 271 S. W. 559; Wilkerson v. Com., 88 Ky. 29, 9 S. W. 836, 837, 10 Ky. Law Rep. 656; Miller v. Com., 248 Ky. 717, 59 S. W. (2d) 969; Hall v. Com., 253 Ky. 148, 69 S. W. (2d) 3. This error was not cured by summoning a jury from Pike county. See Miller Case, supra.

There was great confusion in the evidence, some of the witnesses testified three shots were fired, some witnesses testified they heard four. There is similar conflict regarding what was said and done. There was like conflict regarding light and ability to see. One witness claimed the moon (then nine days old) made things light as day, yet scientists who have the use of our greatest observatories tell us the light we receive from the sun is 436,000 times that which we receive from the moon when it is at its full and its brightest.

The questions on this appeal are such that we only have to consider on this appeal defendant's evidence to learn if he got the instructions to which he was entitled. Johnson, whom we shall refer to as defendant, filed seventeen grounds in support of his motion for a new trial. His motion was overruled, and he has appealed.

The commonwealth's theory of this homicide was that it was a deliberate murder and that theory was set forth in the indictment and instruction No. 1 which is as follows:

"If the jury believe from the evidence in this case beyond a reasonable doubt that the defendant, Gus Johnson, in Floyd County, Kentucky, and before the finding of the indictment herein willfully and not in his necessary or to him apparently necessary self-defense shot Alton Patton, with a pistol, a deadly weapon loaded

with powder and leaden balls, or other hard and explosive substances, and that the said Alton Patton died thereby, you will find the defendant guilty,—guilty of willfull murder if the shooting was done with malice aforethought,—guilty of voluntary manslaughter if the shooting was done without malice aforethought, but in sudden affray or in sudden heat of passion and upon provocation ordinarily calculated to excite passion beyond control. If you find the defendant guilty of willful murder you will fix his punishment at death or confinement in the State Reformatory for life in your discretion. If you find him guilty of *willful murder* you will fix his punishment at confinement in the State Reformatory for a period of not less than two (2) nor more than twenty-one (21) years in your discretion.''

The words "wilful murder" which we have italicized in this instruction should have been voluntary manslaughter, and should be so changed before it is used again.

In attempting to instruct upon the defendant's theory of the case, the court gave this instruction: ''The court further instructs the jury that the defendant, Gus Johnson, was a peace officer of Floyd county at the time he shot and killed Alton Patton, and such as he had the right and it was his duty to preserve the public peace, and to prevent any and all breaches of the public peace committed or about to be committed in his presence, and to arrest if need be in order to preserve the peace. If you believe from the evidence that the deceased, Alton Patton, was publicly drunk and guilty of such boisterous conduct as was calculated to disturb the public peace in defendant's presence, then it was the duty of the defendant to use such means as might be necessary to prevent a continuance of such conduct. He had the right and it was his duty to go to said Patton and to use such force as was reasonably necessary to prevent the continuation of such conduct; and if the said Patton refused to obey and so conducted himself in the presence of the defendant, then the defendant had the right to believe that the said Patton was then and there about to kill him or do him some bodily harm, and that the defendants believed and had reasonable grounds to believe from the conduct of said Alton Patton to avoid such danger either real or to him apparent and it was necessary to shoot the said Alton Patton, you will find

the defendant not guilty on the ground of self-defense and apparent necessity.''

This instruction is erroneous and later we shall point out proper instructions. We do not recall any evidence that Patton was drunk or that the defendant attempted to arrest him for drunkenness. Defendant's claim is that Patton attempted to rescue one or both the parties defendant had in his official custody by making an assault upon the defendant and that he shot Patton in his necessary self-defense.

### Defendant's Theory of the Case.

In such a case as this the defendant does not have to file a written plea, but when he is arraigned and is asked what is his plea, he can and usually does answer ''not guilty'' and the commonwealth must prove every fact necessary to constitute his guilt, but the defendant may under a plea of not guilty take the stand in his own behalf and admit committing the deed charged (just as the defendant in this case admitted the fatal shooting), and then attempt by his own and other testimony to establish facts to justify or excuse the act charged against him. Then he has a theory of the case to be presented to the jury by appropriate instructions. Gibson v. Com., 204 Ky. 748, 265 S. W. 339; Southerland v. Com., 217 Ky. 94, 288 S. W. 1051; Lunce v. Com., 232 Ky. 214, 22 S. W. (2d) 629; Morgan v. Com., 242 Ky. 116, 45 S. W. (2d) 850; Luttrell v. Com., 250 Ky. 334, 63 S. W. (2d) 292; Morgan v. Com., 257 Ky. 691, 79 S. W. (2) 1.

We shall briefly review the testimony of the defendant to see what his theory was. He testified he had been since March, 1936, a deputy constable under A. B. Bryant, the constable of the Third magisterial district of Floyd county, wherein this homicide occurred and had been sent to, and on July 27, 1936, was in, this city of Martin upon official duty. As a deputy constable the defendant had the same rights, powers, duties, etc., as his principal, the only difference being the power of his principal to discharge him, and as that had not been done, we shall speak of him as a constable. A constable is a peace officer. Section 26 of Criminal Code of Practice. As such, he had the power to make arrest without a warrant when a public offense was committed in his presence. Section 36, subsec. 2, Criminal Code of Practice.

A few minutes before dark the defendant arrested and searched John Lyons, who, the evidence shows, was then drunk there on the street in the defendant's presence, and the defendant had Lyons in custody and was sitting in front of a restaurant waiting for a conveyance so he could dispose of his prisoner. Thereupon Alton Patton drove up in a truck that had in it Joe Moran and Wayne Higgins. These three men had been in Martin at this restaurant and a short time before, so Moran says, had driven to Warco a distance of two miles or so to take Higgins home. When they got there, Higgins alighted, then said he wanted to return to Martin and get some more whisky, so he got back in the truck and Patton with Higgins and Moran drove back to Martin, Patton parked his truck near the restaurant and Moran and Higgins started to the restaurant.

The evidence for both the defendant and the commonwealth shows Higgins then was drunk and staggering there on the street and the defendant arrested him, whereupon Higgins made some movement as if to draw a weapon and the defendant, having handed a flashlight which he then had to a boy named Newsome, started to search Higgins. While the defendant was engaged in this search, Alton Patton, who was later killed, ran up and grabbing the defendant's right hand, began beating the defendant over the head with this flashlight which he had got from the Newsome boy. This flashlight is described as weighing about two or two and one-half pounds and being fourteen or sixteen inches long or longer. When Patton seized and hit him, the defendant released his hold of Higgins and began to struggle to free himself from Patton. In that struggle they crossed the street a time or two and Patton finally knocked defendant down, whereupon defendant as he arose drew his pistol and began shooting Patton, from which shooting Patton immediately died. The defendant picked up his flashlight, went to his principal, A. B. Bryant, and surrendered.

Here is the picture presented by that evidence. The defendant had Lyons under arrest and in his custody and was in the act of searching Higgins after arresting him. Whereupon defendant was assaulted by Patton in an attempt to effect the rescue of one or both of the men defendant had in custody. When Patton did this, he violated section 1357 and section 1605, Ky. Stats. De-

fendant had the right to arrest him therefor and it was the duty of the defendant to resist the efforts of Patton to effect the rescue of either or both of the men then in the defendant's official custody.

While the defendant says he did not know Patton, the evidence shows Patton knew the defendant and knew he was an officer, for there is evidence from the commonwealth witnesses that as the defendant was searching Higgins, Patton came up and said: "Don't do that, Gus, I will take him home." Another witness put it this way:

> "Gus Johnson was wrestling with some fellows there, had some man arrested or was trying to arrest some man, and Alton Patton walked up and asked him to leave him alone, and let him take him home, or he said he would take him home."

This indicates Patton knew the defendant was an officer and had a right to do what he was doing and that Patton was tendering himself as the discreet person contemplated by section 396 of the Criminal Code of Practice as custodian of a drunk overnight. Whether he knew the defendant was an officer or not, he would have learned that by reasonable inquiry, hence Patton acted at his peril.

The leading case upon this point is U. S. v. Buck, 24 F. Cas. p. 1289, No. 14,680, wherein Jeremiah Buck was charged with attempting to rescue from a marshal a man whom he then had in custody. What the court actually said on this subject in its opinion occupies about six double column pages, but the substance of it is correctly epitomized in the syllabus as follows:

> "4. Such a prosecution is not maintainable unless the defendant acted 'knowingly and willingly.' But his only ignorance that can excuse him is ignorance of the existence of the custody, or of its lawfulness. Where he might, upon inquiry, have readily known the truth, his omission to inquire is evidence from which his actual knowledge of the truth may be inferred. This is particularly the case where the custody is official."

Patton simply took the law into his own hands and undertook forcibly to effect the escape of Higgins or both these prisoners, which it was not only the right but also the duty of the defendant to prevent and in order

to prevent such rescue the defendant could use such force as he reasonably believed was necessary to prevent it, even to taking the life of the would-be rescuer.

Patton committed another public offense in the presence of an officer when he struck the defendant, for either or both of which defendant had the right to arrest Patton as well as the right to defend himself against the assaults Patton was making upon him. Those and self-defense were his theories of this homicide and defendant was entitled to have those theories set out in concrete instructions. The court will be assisted in the preparation of these instructions by the case of Smith v. Com., 176 Ky. 466, 195 S. W. 811. The court should redraw the self-defense instruction so as to make it conform to the facts as they may be on the next trial. The form approved in Mullins v. Com., 108 S. W. 252, 32 Ky. Law Rep. 1216, and which is given in Hobson, Blain and Caldwell on Instructions to Juries, sec. 758, should materially assist the court in the preparation of the self-defense instruction.

### Misconduct of Prosecuting Counsel.

There is much that is improper in the opening statement and closing argument for the commonwealth that we will not detail since the judgment is to be reversed for other reasons, but such should not occur again and will not be tolerated if it does. Other errors are reserved.

Judgment reversed.