**268 P.2d 1114**

**STATE  v.  DEANE.**

No. 8059.

Supreme Court of Idaho.

April 5, 1954.

Paul S. Boyd, Boise, and Gigray & Boyd, Caldwell, for appellant.

Robert E. Smylie, Atty. Gen., Leonard H. Bielenberg, Asst. Atty. Gen., Blaine F. Evans, Pros. Atty., Ada County, and J. Charles Blanton, Deputy Pros. Atty., Boise, for respondent.

GIVENS, Justice.

Appellant was charged with and convicted of involuntary manslaughter committed by the operation of an automobile upon Highway 44, a four-lane highway in Ada County, Idaho, in an unlawful, negligent and careless manner and without due caution and circumspection, while under the influence of intoxicating liquor and at an excessive rate of speed, against the body of Clyde Stone with great force, thereby causing injuries from which Clyde Stone died.

Numerous assignments of error were made which we will take up and consider in the order in which they were presented.

Appellant urges the court erred in sustaining objections to the opinion testimony of witness Worley as to the speed of the automobile after the collision with the bicycle which decedent and one Tom Fontes were riding; there were no eye witnesses to the collision. The witness Worley operated an upholstery shop on the north side of Highway 44, some 440' east of the point of impact; at that time he was in his place of business and had his back to the highway; he did not see the car prior to or at the time of the collision; he heard the impact and when he turned around he observed the car 15' to 20' west of his place of

152

business, proceeding east on the south side of the highway; he had the car under focus from this point until it stopped some 1000′ east of the place of impact; he did testify that the car was slowing down. The court may exercise its discretion in the admission or rejection of such evidence; while it was proper to receive such evidence for what it was worth, its rejection does not appear prejudicially erroneous. State v. Neil, 58 Idaho 359, 74 P.2d 586; 23 C.J.S., Criminal Law, § 858, subd. (d), p. 70.

Appellant urges generally that the evidence is insufficient to support the verdict of guilty; he urges particularly there is insufficient evidence to show beyond a reasonable doubt appellant was under the influence of intoxicating liquor at the time. His contention that the evidence is insufficient to support a verdict and judgment of involuntary manslaughter is without merit.

■ Without detailing the evidence as to intoxication, suffice to· state appellant himself testified he had a few beers at a tavern on the afternoon of the fatal accident; that he thereafter drove to his home; that his wife was not at home so he undressed and lay down for some time and, upon waking, he dressed, had a sandwich and was driving to Boise for the purpose of picking up his wife at the time of the accident which occurred at approximately nine o'clock p. m., March 31, 1953.

One witness for the State, who was leaving St. Alphonsus Hospital through the emergency entrance on that evening, testified she saw appellant in his wrecked automobile parked near the emergency entrance to the Hospital; that he had the Stone boy, who thereafter died, in his car; that she could detect a strong odor of liquor on appellant and in the car and that he walked unsteadily; that his eyes were glassy and his face red and he portrayed a blank look. That same evening at about ten o'clock p. m., at the hospital appellant gave written authorization to Dr. Joseph Beeman to take a blood sample for the purpose of determining the alcoholic content of his blood. The Doctor testified that appellant at the time had a definite odor of liquor on his breath; that his eyes were bloodshot and that he was unsteady on his feet; that he took a blood sample which had a content of $22\frac{2}{100}$ of one percent alcohol and his opinion, based upon the appearance and actions of appellant and the alcoholic content of his blood, was that appellant was intoxicated at the time the sample was taken. Without laboring this matter further, there was an abundance of evidence from which the jury could conclude appellant was driving his automobile upon a public highway under the influence of intoxicating liquor.

It is urged in giving Instruction No. 14, defining Criminal Negligence, and then in giving Instruction No. 15, wherein the court instructed the jury if it found the killing occurred while appellant was in ·the commission of a breach of one of the statutory laws of the road, as charged in the infor-

mation, it might find appellant guilty, results in a contradiction and could well confuse or mislead the jury.

■ The information charged appellant with involuntary manslaughter substantially in the language employed in State v. Salhus, 68 Idaho 75, 189 P.2d 372; State v. Wheeler, 70 Idaho 455, 220 P.2d 687; and State v. Scott, 72 Idaho 202, 239 P.2d 258; in each case the appellant was charged with involuntary manslaughter arising out of violation of the laws of the road, which proximately caused the death of a human being; in each instance appellant was charged with the commission of unlawful acts, that is, the operation of a motor vehicle upon highways of this State willfully, unlawfully and feloniously in an unlawful, negligent and careless manner and without due caution and circumspection and while under the influence of intoxicating liquor and at a rate of speed and in a manner so as to endanger persons and property, which acts so charged are expressly made unlawful and condemned by Sections 49–502 and 49–503, I.C. Where one is charged with involuntary manslaughter by committing an unlawful act, that is, one prohibited by law which results in the death of another human being, it constitutes involuntary manslaughter. An instruction in such instances on criminal negligence is neither necessary nor proper. State v. Salhus, supra; State v. Wheeler, supra; State v. Scott, supra. The giving of such instruction on criminal negligence cannot operate to prejudice appellant, but is to his advantage. We find no merit in this assignment of error.

■ Appellant further contends the court erred in giving Instructions No. 17 and No. 18 on circumstantial evidence. He bases this contention upon the assertion there is no circumstantial evidence in the record. It is not necessary to, nor do we determine whether this is true. Appellant does not complain that the instructions given did not correctly state the law nor does he in anywise attempt to point out nor does the record show such instructions as given operate to his detriment or disadvantage. An instruction on circumstantial evidence in a case resting on direct testimony does not warrant reversal unless it is clearly made to appear that in some way appellant actually was prejudiced thereby. State v. Hunter, 183 Wash. 143, 48 P.2d 262; People v. Carlson, Cal.App., 167 P.2d 812; People v. Sberno, 22 Cal.App.2d 392, 71 P. 2d 274; People v. Harvey, 109 Cal.App. 111, 292 P. 654.

■ Appellant's requested Instruction No. 5, refusal of which is urged as reversible error, evidently is based on the first paragraph of Section 18–4012, Idaho Code. The instruction and statute limit accident or misfortune, as excusing otherwise culpable and criminal killing, to one doing a lawful act by lawful means.

The requested instruction was incomplete in that it did not embody therein, nor

did any other requested instruction, the substance of Section 19–2112, Idaho Code:

"Upon a trial for murder the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof in the case tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable."

State v. Miller, 65 Idaho 756, 154 P.2d 147.

The evidence, without real dispute, conclusively shows appellant was, at the time of the flagrant killing, driving his car when intoxicated, in violation of Section 49–502, I.C. He signed a permission to have the alcoholic content of his blood tested, which was done as above detailed.

Appellant's intoxicated condition was further established by the way in which appellant brought the boy to the Hospital, and the testimony of Miss Carter, who saw him upon his arrival there:

"A. Yes, as I walked out of the emergency entrance there was a car—a wrecked car parked in the entrance.

"Q. And what occurred? A. Well, as I walked towards the car—I got about six feet from the car and someone was sitting inside of it and said 'Get someone.'

"Q. Sitting inside the car? A. Yes.

"Q. And do you know who that person was? A. It was Karl Deane.

"Q. That is the defendant in this case? A. Yes.

"Q. And then what happened? A. Well, I turned around and went and tried to open the emergency door and it locks so I rang the buzzer and the Sister came down and she asked what had happened, and I said, 'I don't know,' so we both went out to the car and on the lefthand side of the car there was a boy with his head just a little bit below the running board and the door was opened and there was a pool of blood frothing from his head.

"Q. Where was his head? A. About four inches from the pavement.

"Q. Was it hanging over the running board? A. Yes."

* * * * * *

"Q. Did you observe his actions at that time? A. Well, as the Sister and I got out to the car she said to him 'You get out,' and he opened his door and walked around the back of the car and in walking he used the car to aid him to get around to the back of the car and he came up to the door and he made an attempt to take—to try to help the Sister get the boy out of the car, but wasn't much aid and she called another nurse, Miss Jones, who helped him—helped her get the boy on to the cart and I held the cart.

"Q. Was there any particular odor about the person of the defendant? A. Well, the whole premises smelled of liquor."

\* \* \* \* \* \*

"Q. Referring to the car and the person of the defendant were there any odors noticeable? A. Yes.

"Q. What were those odors? A. Well, where I was standing the defendant was near the car and they both smelled of liquor very strongly.

"Q. What was the name of the boy that was in the car? A. Clyde Stone."

The lethal accident occurred on a four-lane highway; the dead boy and his companion were on a bicycle ahead of appellant, where they had a right to be, going in the same direction as appellant.

Appellant's speed was sufficient to catapult the dead boy backwards over his companion peddling the bicycle, through the windshield into the seat and partly through the open right-side door, with his head only a few inches from the ground. Appellant clearly was guilty of reckless driving, violative of Section 49–503, I.C., because he went 300 yards after the dying boy was in this position in his car before he stopped and he left the boy in this position, partly out of the automobile, his head only a few inches from the ground, while he drove some three miles to a hospital.

It was thus conclusively proved appellant killed the deceased boy and that he was intoxicated at the time.

"That defendant was driving the automobile that evening on a public highway while intoxicated, appears clearly in the record, both from his own testimony and that of the state's witnesses; that he struck the deceased with his automobile appears both from his statement to the deputy sheriff the evening when he was arrested, and from his testimony upon the stand." Gibbs v. State, 48 Ariz. 25, 58 P.2d 1037, at page 1038–39.

In automobile accident manslaughter cases, if the essence of Section 18–4012, I.C., is urged as a defense and there is evidence in support of such defense and the instruction is requested, an instruction embodying the principles of Sections 18–4012 and 19–2112, Idaho Code, should be given.

The jury herein could not properly have returned any other verdict than guilty. Therefore, the refusal of the above instruction, while erroneous, was not prejudicial. State v. Marren, 17 Idaho 766, at page 791, 107 P. 993; State v. Salhus, 68 Idaho 75, at page 97, 189 P.2d 372, supra.

The judgment of conviction, therefore, is affirmed.

PORTER, C. J., and TAYLOR and KEETON, JJ., concur.

THOMAS, Justice (dissenting).

I dissent on the ground and for the reason that the court refused to instruct the

156

jury on excusable homicide though requested by appellant.

Under Sec. 18–4012, I.C., homicide is excusable "When committed by accident and misfortune, * * * doing any * * lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent".

This court has held that it is not error to fail to give an instruction on excusable homicide under Sec. 18–4012, I.C., where there is not sufficient exculpatory evidence to justify it and no request was made for such instruction. State v. Miller, 65 Idaho 756, 154 P.2d 147. See also People v. Aguilar, 140 Cal.App. 87, 35 P.2d 137. Neither reason has application here.

Generally in a criminal action the defendant is entitled to have presented instructions relating to his theory of defense for which there is any foundation in the evidence, even though the evidence may be weak, inconsistent or of doubtful credibility; this is so even though the only testimony adduced in support of such defense is that of the defendant. 53 Am.Jur., Trial, sec. 581, p. 458. Moreover this court has held that " 'A defendant is entitled to affirmative instruction applicable to his testimony based upon the hypothesis that it is true, when his testimony affects a material issue of the case' ". State v. Huskinson, 71 Idaho 82, 226 P.2d 779, 782, and the cases cited therein. See also State v. Rutten, 73 Idaho 25, at page 35, 245 P.2d 778.

In the light of this general rule I will consider the evidence adduced which, if believed, in anywise supports appellant's theory of excusable homicide. Appellant testified that on the particular night it was dark and that there were no lights in the immediate area where the collision occurred; that as a fact the nearest light to the place where the collision occurred was some 120' away. There was also evidence that at the time of the accident decedent was riding on the handlebars of a bicycle being pedaled by Tom Fontes; the deceased was resting his feet on the nut on either side of the front wheel; the boys were traveling in the same direction as appellant and were near the outside edge of the paved highway; the bicycle had no mudguard or fenders; Tom Fontes was wearing a pair of blue levis and a dark blue sport jacket and deceased was wearing a blue jacket and blue trousers; there was a small reflector on the rear of the seat of the bicycle. Under the facts as disclosed by the record, appellant could not possibly see the reflector as it would be hidden from view by the sport jacket of the boy who was pedaling the bicycle. Appellant was driving a relatively new English car built close to the ground. He testified on this particular night he was driving between 35 and 40 miles an hour when one-half mile west of the point of impact; such a speed would be lawful at that point; that when he approached the driveway leading to the Soldiers' Home, over which a light is sus-

pended, he reduced his speed and that in his opinion he was not going in excess of 30 miles an hour at any time thereafter; such speed would also be within lawful limits. He further testified that he was driving witth his lights dimmed and that just prior to striking the bicycle and the boys whom he had not at any time seen, he was blinded by the lights of a car going west with its bright lights on; that the car whose lights blinded him passed another car also going west with its lights on dim and that in passing around this car the bright lights of the second car momentarily blinded him and it was seconds later when the collision occurred.

On the testimony of appellant as above briefly related he was entitled to an instruction, where requested, submitting to the jury his defense that the homicide was accidental and occasioned by misfortune; his principal defense was that the homicide was excusable because committed by accident and misfortune in doing a lawful act by lawful means with usual and ordinary caution and without any unlawful intent; he is entitled to have the jury instructed upon any theory of the case which his evidence tends to establish. State v. Huskinson, supra; State v. Rutten, supra. Such rule has been recognized and applied in homicide cases with reference to an instruction on accident and misfortune. State v. Sumpter, Mo.Sup., 184 S.W.2d 1005; State v. O'Kelley, Mo.Sup., 213 S.W.2d 963; Johnson v. Commonwealth, 268 Ky. 555, 105 S.W.2d 641; State v. Budge, 126 Me. 223, 137 A. 244, 53 A.L.R. 241; Graives v. State, 127 Fla. 182, 172 So. 716. See also 41 C.J.S., Homicide, § 372, p. 158; 53 Am. Jur., Trial, sec. 524, p. 421 and sec. 627, p. 488.

The refusal to give the requested instruction on excusable homicide prevented the jury from considering the only substantial defense upon which appellant relied; we have no right to disregard it although we may believe there is ample evidence to sustain the verdict. The refusal to give this requested instruction constitutes prejudicial error. The judgment should be reversed and the cause remanded with instructions to the trial court to grant a new trial.