331 P.2d 265

STATE of Idaho, Plaintiff-Respondent,

v.

Buddy Lee BURRIS, Defendant-Appellant.

No. 8648.

Supreme Court of Idaho.

Oct. 29, 1958.

Melvin J. Alsager, Moscow, for appellant.

Graydon W. Smith, Atty. Gen., Alfred C. Hagan, Asst. Atty. Gen., Lloyd G. Martinson, Pros. Atty., Moscow, for respondent.

TAYLOR, Justice.

Defendant (appellant) was tried upon an information charging murder of the first degree. He appeals from the judgment entered upon his conviction of murder of the second degree.

The assignments of error are:

"The court erred in giving Instruction No. 18 on First Degree Murder for the reason that such a degree of homicide was not sustained by the evidence.

"The Court erred in giving Instruction No. 24 for the reason that this instruction is not applicable where defendant's sole defense is a denial that he committed the homicide; and for the further reason that the evidence was insufficient to support a verdict that the defendant was guilty of the Crime of Murder, or any other or greater crime than manslaughter.

"The Court erred in not granting defendant a New Trial upon the ground that the Verdict of the Jury was contrary to law or evidence."

Defendant did not testify, nor offer any evidence. The evidence offered by the state tends to establish the following facts: The defendant came to Moscow, Idaho, on

or prior to noon of July 16, 1957. In the afternoon of that day and on the 17th and 18th days of July following, he was employed on the farm of witness Hagedorn near Moscow. Hagedorn drove the defendant to Moscow at the close of each day's work and called for him in Moscow on the mornings of the 17th, 18th and 19th. On the evening of the 16th defendant rented a room at the Eggan apartments in Moscow and paid one night's lodging by means of a check given to him by Hagedorn for the afternoon's work. On the evening of the 17th he paid rent for the room at the Eggan apartments for a week by means of Hagedorn's check given him for that day's work. He did not draw $14 pay for his labor performed on the 18th.

On the evening of the 18th defendant went to a tavern in Moscow where he met the deceased, Sirel Kossman, a laboring man, 37 years of age, who lived in the vicinity and was a frequent visitor at the tavern. Deceased and defendant conversed and drank beer at the tavern until about 11:55 p. m., when they departed together, taking with them two quart bottles of beer and proceeded along the sidewalk in the direction of the Eggan apartments.

Defendant had requested the maid at the apartments to awaken him in the mornings. This she did on the morning of the 18th. At 6:25 on the morning of the 19th she knocked on the door of defendant's room. No response coming from within, she unlocked the door and looking in observed the body of deceased upon the floor. She closed the door and asked a male tenant whom she met in the corridor to see if the man was dead. On being assured that he was "quite dead", she called the police.

The police found the nude body of Sirel Kossman lying face up on the floor by the bed in the room which had been rented to the defendant. The body bore wounds about the head, neck and chest. The one sheet remaining on the bed, the pillow and mattress were soaked with blood; there was a small pool of blood on the floor between the bed and the wall below where the pillow lay; and there were smears of blood on the wall and on the floor. The two towels hanging near the washbasin were stained with blood, as was also the bar of soap on the basin.

The room had one window from which a fire escape led to the roof of an adjoining building one story below. A shirt and hat were found upon that roof. The police failing to find the defendant in the vicinity, broadcast a request for his apprehension. About 11:00 a. m. the defendant hitchhiked a ride, from a point on the highway about three miles north of Moscow, to Coeur d'Alene. There he went to the bus depot and boarded a bus for Spokane. He had dropped his wallet, containing his identification card and picture,

on the sidewalk near the bus station entrance. From this his name was recognized as that of the man wanted at Moscow. Police were called and defendant was taken from the bus, arrested and held for the Moscow and Latah county officers. In conversations with the Coeur d'Alene police defendant admitted that he was "involved" with Kossman. Asked to what extent he was involved, he said he had met the man in a bar that evening and that he was "in the hotel room with the man", and that it was his room; that he had suffered no cuts or bruises or marks upon his body. Asked, " 'Burris, were you very drunk when you killed Kossman?' He said, 'Not too drunk'; and 'Did you kill him with your knife or his knife, Burris' and he said it was his knife".

That evening defendant was returned to Moscow. There the sheriff, after requiring defendant to undress, examined his body and found no cuts, bruises or scratches.

Upon removal of the body of the deceased a pocket knife was found on the floor beneath the body. The blades were closed and the large blade was stained with blood. At the morgue the body was examined by a pathologist, especially qualified in causes of death. The pathologist testified: "In the area surrounding the mouth, tip of the chin, and the right cheek bone and the left side of the nose there were dusky red bruises accompanied by considerable swelling"; that he found seventeen stab wounds in the head, neck, chest, and right side, three of which, about four to four and a half inches deep, were in the left chest, each of which penetrated the heart, and each of which would cause death within a matter of minutes, without other cause; that each of these three wounds were of such immediate fatal character that if the first had been self-inflicted, the resulting disability would have been such that the deceased could not have inflicted either of the other two. The pathologist examined deceased's blood and found it to be of type O. The blood test showed a content of 0.253% of ethyl alcohol, which the pathologist testified indicated the deceased was intoxicated at the time of death. See I.C. § 49–1102. The pathologist took three curly brown hairs from the mouth of the deceased. These, with samples of hair taken from the head, armpit, and pubic area of deceased, along with the blood soaked bed sheet and other articles taken from defendant's room, were sent to the F. B. I. laboratory in Washington, D. C. The special agent, who examined the articles at the F. B. I. laboratory, testified as a witness for the state. His qualification is shown by the record. He found that the blood upon the articles taken from defendant's room was of type O, and that the bed sheet submitted, besides blood, contained smears of semen. The three hairs taken from the mouth

of the deceased were from the pubic area of some person other than deceased.

The tavern keeper testified that deceased was quite unsteady and wobbly when intoxicated, but did not become quarrelsome. He had been arrested on a few occasions for intoxication. The officers testified that on such occasions his legs became "rubbery", but that he did not become quarrelsome or offer resistance to them.

■ In support of his first assignment of error, defendant contends the evidence is insufficient to sustain a conviction of murder of the first degree; that there was no evidence of deliberation or premeditation; no evidence sufficient to connect defendant with the commission of the homicide; and that these essential elements of murder of the first degree, not being established by evidence, the accused was prejudiced by the instructions submitting the issue of first degree murder to the jury.

The evidence is amply sufficient to sustain a conviction of murder of the first degree. Corpus delicti is proved by evidence establishing the death of the victim by criminal means employed by another. Defendant is connected with the offense both by the facts and by his admissions.

On the question of deliberation and premeditation, appellant in his brief quotes from State v. Shuff, 9 Idaho 115, at page 126, 72 P. 664, at page 668, as follows:

"The unlawful killing must be accompanied with a deliberate and clear intent to take life, in order to constitute murder of the first degree. The intent to kill must be the result of deliberate premeditation. It must be formed upon the pre-existing reflection, and not upon a sudden heat of passion sufficient to preclude the idea of deliberation."

This rule in practically the same words was given to the jury in instruction No. 18, wherein the court further explained deliberation and premeditation in language somewhat favorable to the defendant.

The evidence tends to show that at the time of the assault upon him the deceased was intoxicated, unsteady and wobbly, that he was not quarrelsome, and either that he made no attack upon the person of the defendant or that he was incapable of effectively making such an attack, and likewise he was incapable of resisting an attack by defendant. Such evidence tends to show that the attack upon the deceased by the defendant was unprovoked or at least was not justifiable or excusable. Beside the bruises on the face, the seventeen stab wounds—and particularly the three fatal wounds to the heart—indicate clearly a deliberate, premeditated purpose to take the life of the deceased. State v. Snowden, 79 Idaho 266, 313 P.2d 706.

The court did not err in submitting to the jury the issue of first degree murder.

State v. Eldredge, 45 Wyo. 488, 21 P.2d 545; State v. Vargas, 42 N.M. 1, 74 P.2d 62; State v. Allison, 122 Mont. 120, 199 P.2d 279; State v. Alsup, 69 Nev. 121, 243 P.2d 256; Walker v. People, 126 Colo. 135, 248 P.2d 287; People v. Deacon, 117 Cal.App.2d 206, 255 P.2d 98; State v. Horton, 57 N.M. 257, 258 P.2d 371; State v. Armstrong, 61 N.M. 258, 298 P.2d 941.

The Snowden case also disposes of appellant's contention that the state's case does not establish malice aforethought.

"Such malice may be expressed or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." I.C. § 18–4002.

As pointed out above, the evidence shows both express and implied malice. State v. Snowden, supra.

In instruction No. 24, which appellant assigns as error, the court gave the language of the statute, I.C. § 19–2112, as follows:

"So far as material, Section 19–2112 of the Idaho Code reads as follows:

" 'Upon a trial for murder the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof in the case tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable.' "

Defendant contends that since he did not testify or offer any evidence, and his sole defense was his denial that he committed the homicide, the instruction was not applicable, and the giving of it was prejudicial error. In support of this contention defendant cites People v. Tapia, 131 Cal. 647, 63 P. 1001, and People v. Diaz, 61 Cal.App.2d 748, 143 P.2d 747. In the Tapia case the deceased's body was found in the ruins of his burned house. Proof of facts necessary to establish the corpus delicti, that is, that death was the result of the criminal act of another, was very slight. Thus, defendant's connection with the death was insufficiently established. He did not attempt to justify or excuse, but merely denied the charge. The court held the giving of an instruction on the burden of establishing mitigation in such case, was prejudicially erroneous. In the Diaz case, the instruction was held improper but not prejudicial.

In People v. Perez, 19 Cal.App.2d 472, 65 P.2d 1319, the appellate court (hearing denied by supreme court) expressly re-

pudiated the holding in the Tapia case. The Perez case was cited by the Supreme Court of California in People v. Tuthill, 31 Cal.2d 92, 187 P.2d 16, at page 22.

The court's instructions 25 [1] and 26 [2] fully explain the application of the statute and dispel defendant's contention that instruction No. 24 would lead the jury to infer that the commission of the homicide by the defendant had been proved.

In State v. Deane, 75 Idaho 149, 268 P. 2d 1114, 1116, this court said:

"Appellant further contends the court erred in giving Instructions No. 17 and No. 18 on circumstantial evidence. He bases this contention upon the assertion there is no circumstantial evidence in the record. It is not necessary to, nor do we determine whether this is true. Appellant does not complain that the instructions given did not correctly state the law nor does he in anywise attempt to point out nor does the record show such instructions as given operate to his detriment or disadvantage. An instruction on circumstantial evidence in a case resting on direct testimony does not warrant reversal unless it is clearly made to appear that in some way appellant actually was prejudiced thereby." 75 Idaho at page 153, 268 P.2d at page 1116.

See also I.C. § 19–3702.

■ What we have said also disposes of appellant's contention that the evidence

1. "You are instructed that if you find that the prosecution, by the introduction of evidence, has proved the commission of the homicide by the defendant, e. i. that the defendant killed Sirel Kossman, beyond a reasonable doubt, and if you further find that such proof on the part of the prosecution does not tend to show that the homicide amounts only to manslaughter, or that the defendant was justified or excusable in committing the homicide, then the burden of proving circumstances that excuse or justify the homicide devolves upon the defendant. Under this rule the defendant is not required to prove such circumstances of justification or excuse beyond a reasonable doubt or even by a preponderance of the evidence, but such proof of the defendant only has to be sufficient, when considered with all the other evidence in the case, to create in you_ minds a reasonable doubt of the defendant's guilt."

2. "You are instructed that if you find that the prosecution, by the introduction of evidence, has proved the commission of the homicide by the defendant, e. i. that the defendant killed Sirel Kossman, beyond a reasonable doubt, and if you further find that such proof on the part of the prosecution does not tend to show that the homicide amounts only to manslaughter, or that the defendant was justified or excusable in committing it, then the law presumes that the homicide was committed with malice and the burden of proving that the homicide was of a mitigated character and was not committed with malice devolves upon the defendant. Under this rule the defendant is not required to prove such mitigated character of the homicide and that it was not committed with malice beyond a reasonable doubt or even by a preponderance of the evidence; but such proof of the defendant only has to be sufficient, when considered with all the other evidence in the case, to create in your minds a reasonable doubt that the homicide was committed with malice."

is insufficient to support a conviction of any other or greater crime than manslaughter, and that the court erred in denying a new trial. We find no error.

Judgment affirmed.

KEETON, C. J., PORTER and SMITH, JJ., and SPEAR, D. J., concur.

McQUADE, J., not participating.