## Mullins v. Commonwealth.

June 4, 1943.

G. G. Rawlings for appellant.

Hubert Meredith, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

The appellant, a negro, was convicted of voluntary manslaughter and sentenced to twelve years imprison-

ment. He urges as grounds for reversal that the verdict was flagrantly against the weight of the evidence; that he was entitled to a directed verdict of acquittal; that the instructions were erroneous; and that the court erred in holding as a matter of law that his victim, Elisha Hoskins, who had arrested him and from whom he was attempting to escape at the time the fatal shot was fired, was a peace officer.

A few minutes before the homicide occurred, Hoskins, a deputy jailer, and Ross Fee, a turnkey, had arrested two women on the streets of Harlan for being drunk. One of them was appellant's wife, and as they were proceeding along the street appellant came up behind the officers and caught Hoskins by the shoulder, saying, "What do you mean grabbing my wife"? Hoskins informed him that he was an officer. A dispute arose as to the right of Hoskins and Fee to make the arrest. The Chief of Police approached the group and according to his testimony, informed the women, in answer to an inquiry, that Hoskins and Fee were officers and that they had better go along with them. According to appellant, the Chief of Police on being appealed to by him, asked "Are these men officers?" and, on being informed by Hoskins that they were, said:

"Well, if they are officers, there is nothing I can do about it, you will have to go on with them."

Thereupon, Hoskins arrested appellant for being drunk, and appellant jerked away and ran across the street and into an alley with Hoskins in pursuit. As Hoskins entered the alley, appellant shot him with a pistol, killing him almost instantly. Appellant claims that Hoskins fired at him from the mouth of the alley, and that he thought Hoskins was trying to kill him and fired his pistol into the wall so as to frighten Hoskins and cause him to "jump back out of the alley." Several witnesses for the Commonwealth, including Fee, testified that Hoskins did not fire his pistol, and that while there were two shots, the second one was fired by Fee who picked up Hoskins pistol after the latter had fallen. Appellant introduced several witnesses who testified that Hoskins fired the first shot, and that Fee did not enter the alley. The Commonwealth introduced several witnesses who testified that appellant, as well as both of the women, were intoxicated at the time they were arrested, and while appellant and his wife admitted that the other

woman was drunk, they both denied that they had drunk anything themselves, and introduced several witnesses who corroborated this statement. Thus it will be seen that while the testimony as to who fired the first shot and as to whether or not appellant and his wife were intoxicated was in sharp dispute, it was admitted that Hoskins had placed appellant under arrest after informing him that he was a peace officer, that appellant had forcibly ''broken the arrest'' and fled into an alley, and that as Hoskins entered the alley in pursuit, he was killed by a bullet fired by appellant. This brief summary of the evidence should be sufficient to show that appellant's contentions that he was entitled to a directed verdict of acquittal and that the verdict was flagrantly against the weight of the evidence are without merit.

The instructions given by the court followed almost exactly those approved by us in the several cases referred to in the notes to Section 881 of Stanley's Instructions to Juries where the approved form is set forth in full. They were modified however, to embrace the appellant's claim that he did not intend to shoot Hoskins, this feature of the defense being covered by that portion of the second instruction relating to the reckless use of the pistol without intent to kill, which would reduce the degree of homicide from murder to voluntary manslaughter. On the whole, we think that the instructions fairly submitted all the issues raised by the proof; but, be this as it may, we would be without power to reverse the judgment on account of errors in the instructions since appellant in his motion and grounds for a new trial neither mentioned nor complained of the instructions. However, he did complain that the court erred ''in holding as a matter of law that the deceased Hoskins, at the time he was killed, was a peace officer;'' and since the instructions were predicated largely upon Hoskins' status as a peace officer, it becomes necessary for us to determine that question.

The killing occurred on December 26, 1942. On the 15th day of the preceding January the County Court entered an order signed by the County Judge and the Circuit Judge, approving the appointment by the jailer of Harlan County of a chief deputy, four turnkeys, two guards, a cook, and a bookkeeper, and fixing their salaries. The order named the deputy jailer but not the other employees. The jailer testified that his deputy re-

signed, whereupon he appointed Hoskins as deputy; and an order was entered in the County Court on November 2, 1942, reciting, "Upon motion of John B. Gross, jailer, it is ordered that Elisha Hoskins be, and he is hereby appointed deputy jailer; the said Elisha Hoskins being present took the oath, and entered upon the discharge of his duties as such." Appellant complains that so much of KRS 71.070 as relates to deputy jailers in counties having a population of 75,000 and less than 200,000 was violated in that the order of November 2d did not show that Hoskins' appointment had been approved by the Mayor of Harlan, or signed by two of the three officials, namely, the Circuit Judge, County Judge, and the Mayor, a majority of whom is required by the Statute to sign an order fixing the number of the jailer's deputies and employees and their salaries. But the purpose of the Statute, as we construe it, was not to limit the jailer's right to name his own employees, as appellant suggests, or his right to fill a vacancy occasioned by death or resignation, but merely to limit the number of deputies and employees and the salaries which might be paid them. The number and salaries of the jailer's deputies and employees having been fixed by order of the County Court, approved and signed by the Circuit and County Judges and presumably approved by the Mayor, the object of the Statute was fully accomplished, and it was neither violated nor departed from when the Jailer filled the vacancy by the appointment of Hoskins with the approval of the County Court.

It is further insisted by appellant's counsel that in any event the Jailer was not a peace officer, and hence, that neither he nor his deputy possesses the power which peace officers possess to make arrests. He has apparently overlooked Section 26 of the Criminal Code of Practice which expressly names jailers as peace officers, and Section 36 which expressly authorizes a peace officer to arrest without a warrant when a public offense is committed in his presence, or when he has reasonable grounds for believing that the person arrested has committed a felony. That a legally appointed deputy possesses the same general powers as the officer whom he represents is too well settled to admit of argument. He may not himself appoint a deputy, or, in all cases, exercise quasi judicial authority conferred on his principal, but in all other respects he stands in the shoes of his

principal. C. J. S. Vol. 6, Assault and Battery, sec. 115, Page 978; Johnson v. Commonwealth, 268 Ky. 555, 105 S. W. (2d) 641; Knuckles v. Board of Education of Bell County, 272 Ky. 431, 114 S. W. (2d) 511.

Judgment affirmed.